**CONTINENTAL CASUALTY COMPANY, Appellant,**

v.

**Michael S. ROBERTSON, Appellee.**

**No. 16444.**

United States Court of Appeals
Fifth Circuit.
June 28, 1957.

---

\* With costs, including cost of the supplemental record.

John E. Simpson, Robert M. Hitch, Savannah, Ga., Hitch, Miller & Beckmann, Savannah, Ga., of counsel, for appellant.

Gilbert E. Johnson, Savannah, Ga., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

The main issue before us here is whether the court below erred in submitting to the jury the question whether poliomyelitis first manifested itself in appellee's child[1] after the effective date of a Family Poliomyelitis Expense Policy issued by appellant insurance company; and if so, whether recovery could be had against the company, not only for expenses provided by the policy, but for the penalties imposed by Georgia statute in cases where payment is re-

---

1. A baby two and one-half years old.

fused in bad faith.[2] Appellee made written application for the policy and paid the premium July 7, 1954, and the undated policy declared its effective date to be July 22nd.[3] The crucial language of the policy is this: "When any member of the family shall, by reason of poliomyelitis which first manifests itself after the effective date of this policy, require treatment commencing while this policy is in force * * * the Company will pay for the following items of expense * * *"

The trial court submitted to the jury the question of when polio, from which the child was ultimately found to be suffering, first manifested itself; and the jury returned a general verdict in favor of appellee for the full amount of expenses he had incurred, including also the statutory penalty and attorney's fee. Appellant takes the position that its motion for directed verdict, made at the conclusion of the plaintiff's evidence and renewed after defendant had put in its evidence, should have been granted.[4]

■■■ The rule generally applicable to the construction of insurance contracts has been thus stated by the Court of Appeals of Georgia:[5] "The words employed in a contract of insurance are to be taken and understood in their plain, ordinary, usual and popular sense, * * *. Also, it is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of the insured and strictly as against the insurer. The policies are prepared by the company by experts and legal advisers acting in the interest of the company, and the insured has no voice in the selection and arrangement of the words employed."

Michelle Frances Robertson, appellee's infant daughter, was stricken [6] July 18th with an illness which, on July 26th, was declared by the doctors to be Poliomyelitis. The crucial question is when, during the days intervening between July 18th and July 26th, the illness "manifested itself" to be polio. The evidence upon which solution of that question must be based was given chiefly by appellee and by Dr. Schley, a pediatrician, and Dr. Waring, an orthopedist. From that evidence, viewed from the standpoint most favorable to appellee, these facts appear.

The infant became ill July 18th, and a general practitioner was called in, who found a sore throat and fever and admin-

---

2. We will deal briefly also with appellant's claim that the court below committed error in certain remarks made by it in the presence of the jury.

3. Action was begun in a Georgia State Court and removed to the Federal Court because of diversity, and appellee sought to have the insurance contract reformed so as to make it effective at an earlier date. This position was based upon the fact that the written application was air-mailed from Atlanta to the Chicago home office of the company on July 7th, and the application contained the provision that it would "become effective not later than ten days after receipt of application in issuing office." The company made no proof of the date of such receipt, but it is unbelievable that five days would be consumed in transmission of an air mail letter from Atlanta to Chicago. The entire situation of the parties would be changed in appellee's favor if the policy had been made effective July 19th, i. e. ten days after receipt of application, allowing two days for its transmission to Chicago. But the court below eliminated this issue from the case, and our disposition of the appeal makes it unnecessary to consider it.

4. The parties agree that the case is governed by Georgia law. The Georgia Code Annotated, Book 7, Title 20, Par. 704, sets forth rules of interpretation of contracts: "All the attendant and surrounding circumstances [to a written contract] may be proved, and if there is an ambiguity, latent or patent, it may be explained; * * *

"Words generally bear their usual and common signification; * * *

"If the construction is doubtful, that which goes most strongly against the party executing the instrument, * * * is generally to be preferred."

5. Division No. 2, 1943, Atlas Assurance Co., Ltd. v. Lies, 70 Ga.App. 162, 27 S.E.2d 791, 792, 793.

6. Another of the four children of appellee was similarly stricken at the same time, but its illness turned out not to be polio.

istered penicillin. The family doctor returned to town on the 19th and relieved the physician first called, and the infant was brought to his office. He found the same symptoms present and gave a second injection of penicillin. She was brought back to his office on the 20th and, chiefly because she had not responded to the penicillin, she was taken to a hospital where other doctors were called into consultation. At that time she experienced difficulty in walking and the congestion in nose and throat persisted. All of the doctors, proceeding with the caution which ordinarily leads them to view all afflictions at that time of year as such, suspected that the illness might be polio; but they were unable to diagnose it as polio because all of the symptoms then existing were commonly found in a number of other diseases.[7] But, although he had asked them "many many times," they did not advise appellee that they diagnosed the child's illness as polio until July 26th, which was the first time the symptoms had become sufficiently pronounced to permit them to classify it with any degree of assurance.

The tendency of the Georgia law to emphasize the "usual and common signification" of word meanings makes dictionary definitions important in determining whether, as contended by appellant, the evidence required the court to hold, as a matter of law, that polio had manifested itself on or before July 22nd. The transitive verb "manifest" is thus defined:[8] "To show plainly; to make to appear distinctly; to put beyond question or doubt; to display; exhibit; reveal; prove; evince; evidence." The essential import of this definition is to recognize the verb "manifest" as embracing the concept of demonstrating plainly, distinctly, or beyond question.[9]

Appellant's argument is bottomed upon the contention that the policy before us would not impose liability upon the company if polio had its origin or inception on or prior to July 22nd. The company could have chosen language of such meaning, but it did not do so. It inserted a word possessing a more exacting connotation, one contemplating the advancement of the disease beyond the point of origin and to the state where

7. The medical witnesses were subjected to extended direct and cross-examination, and it was evident that all of them suspected that the child might have polio, but were uncertain about it. The summary entered on the hospital record July 23rd by Dr. Waring, the specialist, indicates the state of mind of the doctors: "Believe should be treated as polio even though diagnosis in doubt." When asked about that entry the doctor stated: "I don't think we ever discussed the diagnosis as a definite diagnosis but as time went on I am sure I decided in my own mind that it was poliomyelitis * * *" She stated further: "There are many other diseases they [the enumerated symptoms] go along with too. * * * [including] Upper respiratory infections with sniffles, sore throat, diarrhea, staphylitis, meningitis, kop lik nervitis,— I can name many."

8. Webster's New International Dictionary, 2d Ed., Unabridged, 1955, p. 1496. And see, also, to the same effect Webster's New World Dictionary, College Edition, 1954, p. 892; 2 Bouv.Law Dict., Rawles Third Revision, p. 2083.

9. We have considered carefully the cases relied upon by appellant such as Atlas Life Ins. Co. v. Zellner, 1935, 173 Okl. 254, 47 P.2d 151; Illinois Bankers Life Ins. Co. v. Speak, 1939, 186 Okl. 307, 97 P.2d 763; and Bridges v. Mutual Benefit Health & Accident Association, 1934, 49 Ga.App. 552, 176 S.E. 543. Each of the policies involved in these cases used such words as "occurring" or "originating" prior to the delivery or effective date of the policy.

The case upon which greatest reliance is placed, Manolopoules v. American Progressive Health Ins. Co., App.Div., 162 N.Y.S.2d 1016, 1017, typifies the inapplicability of all of appellant's cases. The policy required that the disease "shall originate and first manifest itself * * *" Construing them the court said:

"If the evidence could be interpreted so that the first definite diagnosis of the illness was after the expiration of the 90 day period, it shows nevertheless that the illness originated prior to the expiration of this period."

its presence was plain, distinct or beyond question or doubt. The evidence before the court below did not sustain appellant's position that, as a matter of law, polio had "manifested itself" on or before July 22nd.[10] Under these well settled principles, the court did not err in denying appellant's motion for directed verdict insofar as it related to appellee's expense outlay.

We think, however, that the court below committed error in permitting recovery of the twenty-five percent penalty and attorney's fees provided by the Georgia statute.[11] The company received from its agents (with whom appellee was connected) who had written the policy, a letter dated July 21, 1954 in which it was stated, "By the evening of the twentieth, the doctor diagnosed the illness of one child as polio." While the court correctly held that appellee was not bound by this statement, it, together with other circumstances revealed by the record, in our opinion rescued appellant from any obligation to pay the penalties provided in the quoted statute.[12]

The judgment of the lower court awarding appellee recovery of the full amount of expenses incurred by him is, therefore, Affirmed; and that portion of the judgment allowing recovery for statutory penalty and attorney's fees is Reversed and judgment rendered here for the appellant.

10. The rule governing such a situation has been stated by this Court many times: "It is well settled law that cases are not to be lightly taken from the jury; that jurors are the recognized triers of questions of fact; * * *. On a motion for a directed verdict, it is the duty of the court to accept as true all the facts which the evidence tends to prove, and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion, and if the evidence is of such a character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury." Swift & Co. v. Morgan & Sturdivant, 5 Cir., 1954, 214 F.2d 115, 116. See also Valdosta Milling Co. v. Garretson, 5 Cir., 1955, 217 F.2d 625, and Coleman v. Graybar Electric Co., Inc., 5 Cir., 1952, 195 F.2d 374.

11. Code of Georgia, Annotated, Title 56, Par. 706:
"56–706. (2549) *Insurance companies shall pay damages and attorney's fees, when.*—The several insurance companies of this State and foreign insurance companies doing business in this State in all cases when a loss shall occur and they shall refuse to pay the same within 60 days after a demand shall have been made by the holder of the policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss, not more than 25 per cent. on the liability of said company for said loss; also, all reasonable attorney's fees for the prosecution of the case against said company: Provided, it shall be made to appear to the jury trying the case that the refusal of the company to pay said loss was in bad faith. (Acts 1874, p. 43.)"

12. We do not find merit in appellant's contention that a remark made by the court below in the presence of the jury was prejudicial. At the close of the evidence the court stated: "I don't know anything else for me to do but to direct a verdict for the full amount to plaintiff." Appellant's counsel, instead of moving immediately for a mistrial, proceeded with an argument which convinced the court—and doubtless had its effect with the jury—that the case should be submitted to the jury. Thereupon and before any motion for mistrial was made, the court stated to the jury: "Gentlemen, just disregard anything I said about directing the verdict." Following that, the court made a lengthy explanation to the jury that it had been in error in making the challenged statement; and made it clear to the jury that issues of fact were present which the jury should resolve. The charge subsequently given by the court was unusually clear and explicit and was quite favorable to appellant's theories.
Appellant places heavy reliance on our recent case of Zebouni v. United States, 5 Cir., 1955, 226 F.2d 826, where we reversed a case in which the trial court had made statements to the jury not unlike those here involved. We made it clear, however, that the reversal there was not based on such statements, but upon an erroneous charge having no connection at all with the prior statements we recognized as improper. The other authorities relied on are not persuasive. The trial court in the case before us leaned over backward in its zeal to accord to appellant every right given it by law.