[No. 38778.    Department One.    May 4, 1967.]

WATSON E. HOVIS, *Respondent*, v. INDUSTRIAL HOSPITAL
ASSOCIATION, *Appellant*.*

*Edward P. Reed* (of *Snider, McMullen & Reed*), for appellant.

*Foster & Foster,* for respondent.

LANGENBACH, J.†—Respondent sued appellant on a major medical certificate to recover 80 per cent of the costs of certain medical treatment and surgery.

In late 1959, respondent was given a complete physical examination at the Mayo Clinic. His health was declared "fairly satisfactory" and there was no finding of arteriosclerosis. Two years later, in October 1961, at the age of 61, respondent applied to appellant for major medical coverage. He told the agent for appellant that he had had a slight attack of gout and that he had been treated at the Mayo Clinic for arthritis which was not disabling in a warm climate. With the above qualifications, respondent

*Reported in 426 P.2d 976.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

answered "yes" to the question of whether he was in good health.

Appellant, that same month, issued to respondent a non-cancelable major medical and hospital policy. Appellant agreed therein to pay 80 per cent of the actual medical expenses incurred by respondent within 2 years from the date of onset of illness as defined in the policy. The policy specifically excluded arthritis and its complications. It provided coverage for "Those physical illnesses, unless specifically excluded, which become manifest or have their original date of onset after Membership hereunder has been continuously effective for thirty or more days."

In 1962, while living in California, respondent went to San Francisco for further medical examination and treatment. His symptoms were neither new nor different than he had had for the past 3 to 5 years. He was troubled with cramps in his legs, pain in his hips and he had difficulty in walking any distance.

When examined by a vascular specialist in San Francisco, it was found that respondent had been suffering from "severe and progressive claudication involving both lower extremities" and that his symptoms had been progressive over the past 5 years. The expert testified that if respondent had been examined by a vascular specialist 5 years before, this condition would have been discovered, but not otherwise.

In November 1962, respondent twice underwent surgery. He was first operated on for a "plugged carotid artery" in his neck and later for the correction of an abdominal aortic aneurysm. Costs totaled $3,165.60. Appellant denied liability and respondent sued for 80 per cent of those costs. The trial court found "That neither condition for which plaintiff was subjected to surgery was excluded from the terms of the policy issued to plaintiff by defendant." It granted judgment for respondent.

It is appellant's contention that respondent's illnesses became manifest and had their original date of onset prior to issuance of the certificate and were therefore not

covered. It argues that "One learned in medicine, months or even years before issuance of the certificate, could have determined the cause of the pain, discomfort and disability and could have diagnosed the trouble with reasonable accuracy." This argument was cogently answered by the trial court:

> I don't think there can be any doubt but what the plaintiff is entitled to recover. To adopt any other rule would make this type of coverage substantially worthless. When the company doesn't require a medical examination as a condition precedent it would put the burden upon the insured to have his own medical examination, at his own risk, and I don't think that's the intention of these policies at all.
>
> As far as a condition which becomes manifest, I don't think it becomes manifest until it becomes known. When a thing is manifest, it's known. To say that it is a duty upon the insured to run to a doctor and get a complete examination, and to be sure that the doctor makes full notations of every possible ache and pain that he ever had in his life, would be the effect of the other rule, and it is inconceivable and would shock conscience that a health insurance company could escape liability in that way, and I can't believe it's the law. There's some language in some decisions in other states that might be taken to indicate that, but I don't think that is the law, I don't think it would be intended to go this far.

We agree with the trial court that a condition does not become manifest until it is known. And the evidence is clear that until respondent was examined by a vascular expert, the fact that he had this condition could not be known. To be so examined was not a responsibility resting on respondent.

Appellant also argued that the entire contract was voided because

> Respondent *knew he had something*, although he may not have known what it was, and the appellant was mislead [*sic*] by both affirmative answer that he was then in good health and by omission to specific symptoms and by respondent's assuming to label his ailments as gout and arthritis.

Here again, when appellant did not require a medical examination it took the chance that respondent, not being learned in medicine, would either misinterpret his own symptoms or would rely upon the erroneous diagnoses made on his condition in the past. There was no burden on the respondent to ascertain the precise medical label for his ailments. Consequently, the policy would not be avoided unless respondent can be shown to have refrained from specifying symptoms and to have mislabeled his ailments with an intent to deceive. *Kearney v. Washington Nat'l Ins. Co.,* 184 Wash. 579, 52 P.2d 903 (1935).

The judgment is affirmed.

FINLEY, C. J., HILL, ROSELLINI, and HALE, JJ., concur.