## 43280. BUCKNER v. AMERICAN NATIONAL INSURANCE COMPANY.

ARGUED JANUARY 3, 1968—DECIDED APRIL 1, 1968—
REHEARING DENIED APRIL 16, 1968.

*Richardson, Doremus & Karsman, W. Ward Newton, Sharpe, Sharpe, Hartley & Newton,* for appellant.

*Brannen, Clark & Hester, Fred S. Clark,* for appellee.

FELTON, Chief Judge. In order to affirm the judgment granting the defendant's motion for summary judgment, it must appear as a matter of law from the pleadings and evidence that the sickness(es) or disease(s) which constituted the basis of the plaintiff's claims "first manifested itself" (or themselves) prior to the commencement of coverage under the policy.

With respect to the claim arising out of the removal of the polyp, the question is thus presented as to when the polyp "first manifested itself." Webster's New International Dictionary (unabridged), 2d Ed., defines "manifest" as follows: "Evident to the senses, esp. to the sight; apparent; distinctly perceived; hence, obvious to the understanding; evident to the mind; not obscure or hidden . . . Syn.—Open, clear, visible, unmistakable, indubitable, indisputable, evident, self-evident." "The word 'manifest' is a very strong word. It sometimes means 'self-evident,' or 'indisputable,' or 'indubitable,' " as opposed to being a matter of argument or doubt. *Burch v. Harrell,* 57 Ga. App. 514, 518 (196 SE 205). "The transitive verb 'manifest' is thus defined: To show plainly; to make to appear distinctly; to put beyond question or doubt; to display; exhibit; reveal; prove; evince; evidence." Continental Cas. Co. v. Robertson, 245 F2d 604, 607 (C. A. Ga.). In the case of Bremner v. Marc Eidlitz & Son, 118 Conn. 666, 669 (174 A 172), it was stated that "Evident suggests more than a mental process, but no difficulty in seeing that the thing is true. Manifest is a degree stronger than evident, the mind getting the truth as by an intuition." The court went on to hold that the duty to give notice of a claim for compensation for an occupational disease within a year after "manifestation" of a symptom thereof arises "only when a symptom of that disease should plainly appear, not when it was merely suspected or doubtful." See also, Black's Law Dictionary, 4th Ed.; Words & Phrases, and cases cited

therein using additional synonymns, as "plain, obvious, patent, palpable, conspicuous, clear to the mind, conclusive and incontrovertible."

Did the evidence demand the conclusion that the polyp "first manifested itself," under the above definitions, prior to the effective date of the policy? Dr. Rabhan's deposition showed as follows: In his treatment of the plaintiff for an anal ulcer and hemorrhoids, it was necessary to make an x-ray preceded by a barium enema. The x-ray report, done by another doctor, was as follows: "The colon was seen to fill normally to the cecum. No organic defect is detected. There was one area of luscentcy seen on the films at the level of the lower descending colon which could not be demonstrated on screen studies. This may represent a small fecal particle. However, in view of its location a repeated study including a double contrast of this region may be of value to exclude a small polyp." Dr. Rabhan himself looked at the films and concluded that the area in question looked like a fecal particle to him. The nurse informed him that she had not been able to clean out the plaintiff adequately with the enema, which the plaintiff had said was painful, with the consequence that there were many fecal particles in the enema, hence on the film. He consulted a roentgenologist, who told him, "Well, we've got something here, we don't know what it is. It isn't much. We will have to do a repeat study." Repeat studies were routinely done, but, because of the pain it caused the plaintiff, he agreed, at her request, to postpone the repeat x-ray study until some 4 months after her October operation for the anal ulcer and hemorrhoids. The polyp was removed from the area which was in question at the time of the prior x-ray, but diagnosis of such a small polyp is never made on the basis solely of a first examination. He told the plaintiff after the first x-ray that there was not anything bad as far as he could tell and that the questionable area represented a fecal mass, which had to be re-checked. He had answered all of the defendant insurer's specific questions with regard to the plaintiff's medical record.

The above evidence, together with appellant's denial of knowledge of "any physical . . . disease or impairment," de-

mands the legal conclusion that the polyp condition did not "first manifest itself" prior to the effective date of the policy, under the definitions of "manifest" set forth hereinabove and the definition which we deem applicable. Certainly, the first x-ray did not, by itself or by the medical experts' evaluation thereof, indicate the existence of a polyp "indisputably, indubitably, beyond question, doubt or argument, conclusively" and "incontrovertibly," etc., since it was shown that a second examination was always required for a positive diagnosis. It follows that, if the doctors and other medical experts could not positively know of the existence of the condition, the lay plaintiff likewise could not, there being no evidence that she was aware of the condition by having experienced any symptoms thereof. She could not, then, be guilty of misrepresenting facts of which she had no knowledge. It appears that both the applicant and her doctor disclosed to the insurance company all *known* physical sicknesses and diseases in her "health history." The insurer was thereby put on notice, if it so desired, to obtain any further and more specific information. *Gilham v. Nat. Life &c. Ins. Co.*, 104 Ga. App. 459, 463 (122 SE2d 164).

The present case is distinguishable from that line of cases involving policy requirements that the illness or disease *originate* after the date of the policy, in which type of cases recovery may sometimes be barred even where there has been no "manifestation" of the disease, as long as it is determined that the disease had, in fact, already originated. See *Lovett v. American Family Life Ins. Co.*, 107 Ga. App. 603 (131 SE2d 70); *Smith v. Inter-Ocean Ins. Co.*, 115 Ga. App. 584 (155 SE2d 665); 53 ALR2d 682, 689, citing *National Life Ins. Co. v. Bean*, 15 Ga. App. 661 (84 SE2d 152) and *Wooten v. Life Ins. Co. of Ga.*, 93 Ga. App. 665 (92 SE2d 567). Such cases are valid, however, for the proposition that such policy provisions are strictly construed against the insurer, with any ambiguities resolved in favor of the insured. Had it so chosen, the defendant insurer might have used a more inclusive term, such as "originate"; having used the more restrictive term "manifest," however, it is bound by the meaning of the term it used. Moreover, it might even be said that the term "manifest itself" is narrower

than merely "manifest," the former possibility requiring some overt symptom which can be detected without special examination, which the latter might encompass.

In any event, the evidence did not show that the policy exclusion was applicable against the plaintiff insured; therefore, the court erred in its judgment granting the summary judgment in favor of the defendant with respect to the portion of the plaintiff's action seeking benefits with regard to the removal of the polyp. The granting of the summary judgment with respect to the second period of hospitalization was not error, since the petition fails to allege a cause therefor, which would place it within the coverage of the policy. The evidence demanded a finding that the policy exclusion did not apply against the plaintiff with respect to the polyp removal; therefore, the court erred in its judgment denying the plaintiff's motion for summary judgment to that extent.

*Judgment affirmed in part; reversed in part. Eberhardt and Whitman, JJ., concur.*