ANTHONY CARDAMONE *et al.*, Plaintiffs-Appellants, *v.* ALLSTATE INSURANCE COMPANY, Defendant-Appellee.

First District (5th Division)    No. 76-1035

Opinion filed May 27, 1977.

Joseph J. La Gioia, Jr., of Niles, for appellants.

Peterson, Ross, Rall, Barber & Seidel, of Chicago (Norbert J. Wegerzyn and James D. Wangelin, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs brought this action to recover medical benefits under a health insurance policy. The trial court granted defendant's motion for summary judgment. On appeal plaintiffs contend: (1) that an exclusionary provision in the policy does not apply and, alternatively, if it does apply, (2) that defendant's agent waived this provision.

On February 25, 1974, plaintiffs entered into a contract of health insurance, under which defendant agreed to pay certain medical expenses incurred as a result of sickness or injury. The policy defined sickness as follows:

> "*Sickness* means sickness or disease that first manifests itself after the coverage under which claim is made has been in force 30 days for the family member whose sickness is the basis of the claim."

In April 1974 plaintiffs filed a claim with defendant for medical expenses incurred as a result of surgery performed on Mrs. Cardamone. Defendant refused to honor plaintiffs' claim, asserting that the sickness first manifested itself during the exclusionary period of the policy. Plaintiffs brought suit alleging that the exclusionary provision does not apply. Later, plaintiffs amended their complaint, adding a second count, in which they alleged in the alternative that defendant's agent waived this provision. Thereafter, the court granted defendant's motion for summary judgment based on the following facts adduced through discovery depositions.

*Anthony Cardamone*

On February 25, 1974, he and his family applied to defendant, through its agent, J. Hilgenberg, for health insurance. Other than pregnancy, Hilgenberg did not discuss policy exclusions with him.

He next spoke with Hilgenberg sometime between April 3 and the date his wife entered the hospital (April 18, 1974). He asked him to check the policy and tell him if it covered his wife's gallbladder surgery. Hilgenberg said it did.

He also visited defendant's office in Skokie on April 15 or 16, 1974. There he spoke to an unidentified woman, who told him that the policy covered his wife's operation. Although he told her his wife had X rays on April 1, 1974, he did not mention that his wife had visited Dr. Giardina on March 25, 1974.

Neither agent of defendant asked how long his wife had suffered stomach pains.

*Kathleen Cardamone*

She first visited Dr. Giardina on March 25, 1974, complaining of stomach pains, which she had been having for about a week or two. The pains were not constant, but would come and go. She had no idea she had gallstones. Dr. Giardina suggested about six possible causes of the pain including a gastric problem, a spastic stomach, an ulcer, and gallstones.

On her second visit to Dr. Giardina he informed her that she had gallstones and that she would need surgery. Thereafter, she spoke with Hilgenberg three times. On each occasion he assured her that the policy covered her operation. Although she told him she needed gallbladder surgery, she did not tell him she had visited Dr. Giardina on March 25, 1974. Neither Hilgenberg nor the defendant's office in Skokie asked if she had seen a physician.

Originally the hospital requested a $500 deposit; however, after the hospital called defendant it reduced the deposit to $350.

She acknowledged stating on defendant's claim form that her symptoms first occurred in February 1974 and that she was first treated

on March 25, 1974. However, Dr. Giardina did not treat her on March 25, 1974. Rather, this was her first visit to him.

*Dr. Jacob Giardina*

Kathleen Cardamone visited his office on March 25, 1974, complaining of upper abdominal pain and disturbances with a fatty diet. Her pain was intermittent in nature and apparently had occurred on several occasions. Although he did not determine how long she had been having the pain, he had the impression it was only a short while. She did, however, have a history of abdominal pain.

Although his "impression" then was that "she had a gallbladder disorder" her pain could have been caused by something else such as liver gastritis, or possibly an ulcer.

Diagnosis of gallstones is made by establishing a patient's history, performing a clinical examination, taking X rays, and making a work-up verification. Kathleen Cardamone had a history which was consistent with his diagnosis of gallstones.

The diagnosis of gallstones was not positive until X rays were taken on April 1, 1974. Gallstones are concretions formed by a layering of stagnant bile. Although he has no idea how long they take to develop, gallstones the size of those removed from plaintiff would take longer than one month to form.

While he assumes plaintiff's condition developed prior to March 25, 1974, he does not think she knew of her condition, because it occurs infrequently in persons of her age (24).

Provided the gallstones pre-existed March 25, 1974, X rays taken on that date would have revealed them. However, it is possible that on March 25, something other than gallstones caused plaintiff's pain. Nonetheless, it is his opinion that gallstones were present on March 25, 1974, and were the cause of her pain.

OPINION

Plaintiffs initially contend that Kathleen Cardamone's sickness first manifested itself after the 30-day exclusionary period. They assert that the phrase "first manifests itself" is ambiguous. Citing Black's Law Dictionary which defines "manifest" as "evident to the mind * * * and * * * synonymous with * * * clear * * * unmistakable [and] indubitable * * *." (Black's Law Dictionary 1115 (4th ed. 1951)), they argue that her illness did not manifest itself until revealed by X ray on April 1, 1974. Because this was six days after the effective date of the policy, they assert that the exclusionary provision does not apply.

● 1    Although, as plaintiffs suggest, ambiguous terms will be strictly construed in favor of the insured (*Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America* (1952), 411 Ill. 325, 104

N.E.2d 250) this principle "must yield to rules of reasonable construction, and such does not permit the straining of plain, unambiguous language to create a supposed ambiguity where none in fact exists; where the provisions are plain and certain there is no room for construction, and the language should be taken in its plain, ordinary, popular sense. [Citations.]" *Lundquist v. Illinois Life & Accident Insurance Co.* (1960), 24 Ill. App. 2d 316, 323, 164 N.E.2d 293, 297.

■■ ■ The provision at issue excludes any sickness which "first manifests itself" within the initial 30 days of the policy. Here, although Dr. Giardina did not make a final diagnosis until April 1, 1974, it is "clear," "unmistakable," and "indubitable" that Kathleen Cardamone was sick on March 25, 1974. She admitted visiting Dr. Giardina on March 25, 1974, one day prior to the effective date of her policy, complaining of stomach pains. While we are not certain when her symptoms first appeared, it is clear that by this date they were sufficiently pronounced for her to seek medical attention. Admittedly, Dr. Giardina only had an "impression" at this time that she had gallstones. However, this "impression" proved later to be correct. Moreover, the exclusionary clause does not require that the *diagnosis* occur within 30 days of the issuance of the policy, but rather that the *sickness* manifest itself within this time. In the instant case it clearly did. See *Dowdall v. Commercial Travelers Mutual Accident Association of America* (1962), 344 Mass. 71, 181 N.E.2d 594.

In addition we note that Dr. Giardina stated that the diagnosis of gallstones could have been made on March 5, 1974, had X rays been taken on that date. Nonetheless, plaintiffs urge us to base our decision on the happenstance of the scheduling of Kathleen's X rays. We will not. The facts prove that her illness first manifested itself within the exclusionary period of the policy.

Plaintiffs principally rely on *Continental Casualty Co. v. Robertson* (5th Cir. 1957), 245 F.2d 604, and *Buckner v. American National Insurance Co.* (1968), 117 Ga. App. 633, 161 S.E.2d 319. However, we do not find the reasoning of these cases persuasive.

In *Robertson*, plaintiff's daughter suffered from polio, while in *Buckner* plaintiff had a polyp on her colon. They both saw their physicians *before* the effective dates of their policies. Although their doctors initially suspected the diagnosis which was finally made, final diagnosis did not occur until *after* the effective dates of their policies. In each case the court held that the illness did not manifest itself until the time of the final diagnosis.

The *Robertson* and *Buckner* courts strictly applied the dictionary definition of "manifest." They held that the diagnosis must be "beyond question" (245 F.2d 604, 608) and "incontrovertible" (117 Ga. App. 633, 636, 161 S.E.2d 319, 321), reasoning that the insurer, as the author of the

contract, could have employed language possessing a less exacting connotation had it so desired. This plainly ignores the history of this terminology.

Formerly, insurers excluded coverage for sickness originating or commencing before the effective date of the policy. (*E. g., Broccolo v. Horace Mann Mutual Casualty Co.* (1962), 37 Ill. App. 2d 493, 186 N.E.2d 89; *Craig v. Central National Life Insurance Co.* (1958), 16 Ill. App. 2d 344, 148 N.E.2d 31.) Courts, however, finding this terminology ambiguous, strictly construed it against the insurer saying:

> "[T]he rule would appear to be that the origin of said sickness is deemed to be the date it first becomes *manifest* or active or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease. [Citations.]" (Emphasis added.) *Craig v. Central National Life Insurance Co.* (1958), 16 Ill. App. 2d 344, 354-55, 148 N.E.2d 31, 36; *Broccolo v. Horace Mann Mutual Casualty Co.* (1962), 37 Ill. App. 2d 493, 498, 186 N.E.2d 89, 91.

The expression of this rule in many jurisdictions (Annot., 53 A.L.R.2d 686 (1957)) led insurers to employ the language of the court. Nonetheless, the *Robertson* and *Buckner* courts admonished defendant insurer for not employing less restrictive terminology and strictly construed language suggested to the insurer by other courts. 245 F.2d 604, 607-08, 117 Ga. App. 633, 637-38, 161 S.E.2d 319, 322.

We also note that both these cases involve facts not present here. In *Robertson* doctors for plaintiff's daughter testified that they were unable to diagnose her illness earlier. Similarly, the court in *Buckner* at least partially based its decision on the fact that plaintiff had no symptoms. In addition, the initial diagnosis in both cases was far more tenuous then it was here.

Plaintiffs also rely on *Hovis v. Industrial Hospital Association* (1967), 71 Wash. 2d 169, 426 P.2d 976, and *Jackson v. Pacific Mutual Life Insurance Co.* (Kansas City Ct. of App., Mo. 1957), 308 S.W.2d 291. Although these courts reached results opposite to ours, both decisions are distinguishable. Unlike here, plaintiff in *Jackson* had not seen a physician regarding his pain until after the effective date of his policy. Similarly, although *Hovis* had been examined at the Mayo Clinic prior to the effective date of his policy there was no finding then of the arteriolsclerosis he was eventually found to have. Clearly, neither sickness manifested itself prior to the effective dates of the policies involved.

Plaintiffs alternatively contend that if the exclusionary provision of the policy does apply, defendant waived it. Although plaintiffs concede that they never informed defendant's agents that Kathleen had visited her physician regarding her condition prior to the effective date of the policy,

they nonetheless argue on appeal for the first time that defendant had a duty to inquire as to the date of her first visit to Dr. Giardina, before rendering its opinion as to coverage.

■■ The theory upon which a case is tried in the lower court cannot be changed on review and an issue not presented to or considered by the trial court cannot be raised for the first time on review. (*Kravis v. Smith Marine Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417, 420.) This rule is applicable even if appeal is from a summary judgment. (*Smith v. Ashley* (1975), 29 Ill. App. 3d 932, 332 N.E.2d 32.) Here, although plaintiffs argued below that defendant had *actual* knowledge that Kathleen consulted Dr. Giardina on March 25, 1974 (which as the depositions reveal is clearly untrue), they never argued that defendant had an affirmative duty to inquire as to when she first visited the doctor. Consequently, we will not consider this issue raised for the first time on appeal.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.