JOANN M. VERDEYEN, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF BATAVIA PUBLIC SCHOOL DISTRICT No. 101, Defendant-Appellee.

Second District   No. 2—85—0756

Opinion filed December 5, 1986.

Wayne A. Schwartzman and Roy D. Winn, both of Wayne Schwartzman & Associates, of Chicago, for appellant.

Thomas K. Prindable, of Batavia, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, Joann M. Verdeyen, filed a three-count complaint against defendant, board of education of Batavia Public School District No. 101, Kane County, seeking a declaration of her statutory rights under the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 1—1 *et seq.*) and a determination of other contractual and common law rights. Specifically, count I sought declaratory and injunctive relief and damages for defendant's violation of plaintiff's seniority rights under sections 10—22.23, 24—11, and 24—12 of the School Code (Ill. Rev. Stat. 1983, ch. 122, pars. 10—22.23, 24—11, 24—12). In count II plaintiff requested declaratory and injunctive relief and damages based on equitable estoppel. Count III set forth a claim for declaratory and injunctive relief and damages for the defendant's breach of the collective-bargaining agreement between defendant and the Batavia Education Association.

Subsequently, plaintiff filed a motion for summary judgment on counts I and III of her complaint, pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005) and Illinois Supreme Court Rule 191 (87 Ill. 2d R. 191). Defendant filed a countermotion for summary judgment on counts I, II, and III. Both parties submitted memoranda in support of their respective motions. Following oral argument on the motions, the trial court denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment on counts I, II, and III. This appeal followed.

Plaintiff, a registered nurse who has been licensed by the State of Illinois since 1962, was hired by defendant as a full-time nurse for the 1974-75 school term. At that time, defendant applied for and plaintiff was issued a "letter of approval" from the school approval section of the Illinois State Board of Education. A second "letter of approval" was issued for the 1975-76 school term.

In 1975 the Illinois State legislature amended section 10—22.23 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 10—22.23), requiring that any school nurse employed by a school board on or after July 1, 1976, must have a school service personnel certificate in accordance with the requisites set forth in section 21—25 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 21—25). School nurses hired prior to July 1, 1976, were not required to have a certificate in order to continue their employment. Section 21—25 provides that an applicant for a school service personnel certificate must have a bachelor's degree from a recognized institution of higher learning. As of June 1976, plaintiff needed 12 credit hours to complete her bachelor's degree.

According to plaintiff's affidavit, filed with her motion for summary judgment, plaintiff met with Dr. James A. Clark, superintendent of District 101, before registering for the 1976 summer college term to determine whether it was necessary for her to complete the requirements for her bachelor's degree during that summer. By completing these requirements, plaintiff would be able to become certified by the beginning of the 1976-77 school term. In her affidavit plaintiff stated that Dr. Clark assured her that it was not necessary for her to become certified by the beginning of the 1976-77 school term. Dr. Clark, in his affidavit which accompanied the defendant's summary judgment motion, recalled no specific details of his conversation with plaintiff, but related it was not unlikely that he would have told plaintiff that to continue her employment for the 1976-77 school year she did not need to have a school service personnel certificate since she had been hired as a school nurse prior to July 1, 1976.

In her affidavit plaintiff stated that she had relied on the statements which she attributed to Dr. Clark and did not complete the requirements for her bachelor's degree until the summer of 1977. Following receipt of her degree, plaintiff applied for and was issued a school service personnel certificate.

On March 23, 1983, plaintiff received written notice that defendant had honorably reduced her from a full-time to a part-time nurse due to the financial conditions of the school district. As a result, plaintiff worked three days a week rather than five during the 1983-84 and 1984-85 school years. During the period plaintiff was employed on a part-time basis, Judy Grosklag, a certified school nurse hired in August 1976, continued to be employed on a full-time basis.

In the memorandum supporting her motion for summary judgment, plaintiff contended that Grosklag, rather than plaintiff, should have been reduced from a full-time nurse to a part-time nurse since plaintiff had two more years of seniority with the school district than Grosklag. Plaintiff further stated that due to her reliance on Dr. Clark's representations that she did not need to become certified by the beginning of the 1976-77 school term, she deliberately refrained from completing her bachelor's degree until 1977. Plaintiff believed that the defendant would count her seniority as beginning from her date of hire in 1974 and not from her date of certification in 1977. Additionally, plaintiff set forth in her affidavit that due to defendant's failure to give her proper seniority, she had been paid an improper salary for the school years of 1977-84.

Following a hearing on plaintiff's motion for summary judgment as to counts I and III of plaintiff's complaint and on defendant's mo-

tion for summary judgment as to counts I, II, and III, and a review of the pleadings and memoranda filed by the parties, the trial court found that the plaintiff did not become certified for tenure by virtue of the 1975 amendment of section 10—22.23 of the School Code; that plaintiff first qualified for tenure for the 1979-80 school term; that Judy Grosklag qualified for tenure for the school term 1978-79; and that count II of plaintiff's complaint did not state a cause of action in estoppel.

On appeal plaintiff contends: (1) that the trial court erred in determining that plaintiff did not become automatically certified by virtue of the 1975 amendment to the School Code and therefore did not enter into contractual service in the 1976-77 school term; (2) that plaintiff had more continuous service within the school district than Grosklag; (3) that the trial court erred in granting summary judgment for the defendant on count II; and (4) that the trial court erred in holding that defendant did not breach the collective-bargaining agreement between defendant and the Batavia Education Association.

When defendant hired plaintiff in October 1974, school nurses were not required to be certified under the School Code. In 1975 the Illinois legislature amended section 10—22.23 of the School Code to require that school nurses be certified. As amended, the section provides:

"To employ a registered professional nurse and define the duties of the school nurse within the guidelines of rules and regulations promulgated by the State Board of Education. Any nurse first employed on or after July 1, 1976 must be certificated under Section 21—25 of this Act." (Ill. Rev. Stat. 1983, ch. 122, par. 10—22.23.)

Under the amendment, a school board could continue to employ an uncertified nurse if she was hired prior to July 1, 1976. But, any nurse hired after that date was required to be certified under section 21—25 of the School Code.

Section 21—25 provides in relevant part:

"A school service personnel certificate shall be issued to those applicants *** who have a Bachelor's degree with not fewer than 120 semester hours from a recognized institution of higher learning and who meets the requirements established by the State Superintendent of Education in consultation with the State Teacher Certification Board. *** The holder of such certificate shall be entitled to all of the rights and privileges granted holders of a valid teaching certificate, including teacher benefits, compensation and working conditions." (Ill. Rev. Stat. 1983, ch. 122, par. 21—25.)

Consequently, under the provisions of section 21—25, any school nurse hired after July 1, 1976, must have applied for and been issued a school service personnel certificate. To receive that certificate she must have earned a bachelor's degree from a recognized institution of higher learning. Once a school nurse became certificated, she was entitled to all of the rights and privileges granted teachers, including contractual continued service or tenure. However, to enter upon contractual continued service, a certified nurse must first have been employed within a school district for a probationary period of two consecutive school years. Ill. Rev. Stat. 1983, ch. 122, par. 24—11.

Section 24—12 of the School Code deals in part with the removal or dismissal of teachers in contractual continued service. This section applies to school nurses as well, since "teacher," as defined under section 24—11 of the School Code, "means any or all school district employees regularly required to be certified under laws relating to the certification of teachers." (Ill. Rev. Stat. 1983, ch. 122, par. 24—11.) The terms "removal" or "dismissal" as used in section 24—12 encompass any reduction in the extent of a teacher's employment, including the reduction from a full-time position to a part-time position (*Catron v. Board of Education* (1984), 126 Ill. App. 3d 693, 696, 467 N.E.2d 621; *Caviness v. Board of Education* (1978), 59 Ill. App. 3d 28, 30-31, 375 N.E.2d 157), and "[a]s between teachers who have entered upon contractual continued service, the teacher or teachers with the shorter length of continuing service with the district shall be dismissed first" (Ill. Rev. Stat. 1983, ch. 122, par. 24—12).

It is plaintiff's first contention that the language of amended section 10—22.23 of the School Code, relating to the hiring of school nurses, not only did not require her to become certified but also granted her previous experience as a school nurse the equivalent of certification. Plaintiff maintains, therefore, that since she had been employed by defendant during the 1974-75 and 1975-76 school terms, thereby fulfilling the two-year probationary requirement of section 24—11, she entered contractual continued service and became eligible for tenure at the beginning of the 1976-77 school term. As Judy Grosklag was not hired by the defendant until 1976, she did not become eligible for tenure until the beginning of the 1978-79 school term. Consequently, plaintiff asserts that she acquired tenure two years prior to Grosklag and, thus, as the nurse with the shorter length of continuing service, Grosklag rather than plaintiff should have been reduced to a part-time position. However, we do not agree with plaintiff's interpretation of the amendatory language of section 10—22.23 and the results she reaches by that interpretation.

■■ ■ The cardinal rule of statutory interpretation is to ascertain and give effect to the intent of the legislature in enacting the statute. (*Swanson v. Board of Education* (1985), 135 Ill. App. 3d 466, 470, 481 N.E.2d 1248.) The language used is a primary source for determining legislative intent (*Board of Trustees v. Taylor* (1983), 114 Ill. App. 3d 318, 322, 448 N.E.2d 1171), and where the language is clear, it will be given effect without resort to other sources. *People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174.

The plain language of amended section 10—22.23 states that any nurse first employed on or after July 1, 1976, must be certificated under section 21—25 of the School Code. Section 21—25 clearly states that an applicant for a school service personnel certificate must possess a bachelor's degree in order to be issued the certificate. No exceptions to this requirement appear within section 21—25, and clearly no provision appears in section 21—25 or section 10—22.23 to indicate or even imply that the experience of a school nurse hired prior to July 1, 1976, automatically qualifies her for a certificate or makes her eligible to be considered certified despite her lack of a certificate. In this respect, we agree with defendant's contention that on its face the language of 10—22.23 does not grant nurses employed by a school board prior to July 1, 1976, any certified status.

■■ ■ Nevertheless, when differing interpretations of the statute are proffered, as is the case here, legislative intent must be gathered not only from the language used, but also from the reasons for the enactment and the purposes to be thereby attained. (*Pielet Brothers Trading, Inc. v. Pollution Control Board* (1982), 110 Ill. App. 3d 752, 755, 442 N.E.2d 1374.) Moreover, in determining legislative intent courts may consider the entire statutory scheme, construing the statute in a fashion which renders it useful and logical. (*Swanson v. Board of Education* (1985), 135 Ill. App. 3d 466, 471, 481 N.E.2d 1248.) By considering section 10—22.23 in relation to sections 21—25, 24—11, and 24—12 of the School Code, it is apparent that the legislature's reasons for enacting the amendment to section 10—22.23 were to assure the employment of qualified nurses by school boards and to guarantee those nurses who have qualified for a school personnel certificate priority over nontenured nurses or over those with lesser continuing service. It would seem that the purposes to be attained thereby were to provide nurses with some degree of job stability free from arbitrary hiring and firing, to attract nurses of high capabilities, and to provide for the retention of qualified nurses.

Both plaintiff and defendant refer to the same statements made by legislators during the passage of the amendment to section 10—

22.23 to support their respective positions regarding the interpretation of the amendatory language. We consider both interpretations to be incorrect, although we find the legislative statements ambiguous and confusing and little help in providing any real guidance regarding the legislative intent.

The particular statements relied on by both parties appeared during the following Senate debate on the third reading of Senate Bill 1369 (the amendment to section 10—22.23):

"SENATOR BRUCE:

Yes, Mr. President, the Illinois Office of Education has developed what is known as a School Service Personnel Type 73 Certificate with school nurse endorsement. The Office of Education, the Department of Public Health, the Illinois Association of School Nurses, the Illinois Nurses' Association, Superintendent of Education, Mark Wick, has stated that the bill as amended, which will make the Act effective in July rather than in January, meets with their approval, and Mr. President, if you would assist me, there is either a grandfather, a grandmother, or a grandperson clause in this bill, which will mean that all presently certificated nurses will continue to be certificated.

PRESIDENT:

Any further discussion? Senator Shapiro.

SENATOR SHAPIRO:

I'd like to address a question to the sponsor, Mr. President.

PRESIDENT:

He indicates he'll yield.

SENATOR SHAPIRO:

Senator Bruce, does this take care, now, of the school nurse who becomes certified and then moves to another district, or was un not certified, would she lose the grandfather clause that she has if she would move to another district?

PRESIDENT:

Senator Bruce.

SENATOR BRUCE:

No, if she has been first hired as a school nurse prior to now, July 1, '76, she could move to a new district and remain certificated.

PRESIDENT:

Any further discussion? Senator Berning.

SENATOR BERNING:

One question of the sponsor. What is the difference between a registered professional nurse and a certified nurse?

PRESIDENT:

Senator Bruce.

SENATOR BRUCE:

Well, I'm not sure I understand your question, Senator Berning. Before they could be a nurse they would have had to pass either a two year certificate program or a three year RN program, before they would even qualify. In addition to that there have been guidelines developed where pediatric care and those requirements would apply to a registered certificated school nurse. What this bill says is that in July 1 they would have to have that additional training.

SENATOR BERNING:

My question simply is, is certification required under 21—25, is that a greater requirement than for a registered professional nurse?

PRESIDENT:

Senator Bruce.

SENATOR BRUCE:

Yes." 79th Ill. Gen. Assem., Senate Proceedings, May 20, 1975, at 61-62.

Plaintiff argues that the preceding statements indicate that an individual's experience as a school nurse should be considered equivalent to certification. According to plaintiff, the enactment of section 21—25 created a dual class of citizenship for school nurses, one composed of uncertified nurses and another composed of nurses who held a school service personnel certificate. Plaintiff maintains that the amendment to section 10—22.23 was designed to eliminate this dual citizenship and to create one class of nurses by requiring all nurses employed after July 1, 1976, to be certified while "grandfathering" in all previously employed nurses who were uncertified. As a result, plaintiff asserts, both certified and uncertified school nurses were now eligible under the amendatory language of section 10—22.23 to enjoy all rights and privileges granted holders of teaching certificates, including tenure.

Defendant, on the other hand, maintains that the statements of the legislators involved in the Senate debate do not reveal any intent to grant certification to those nurses hired prior to July 1, 1976, and that the reference to a "grandfather clause" by Senator Bruce refers to a nurse's continued employment and not to her status as a certified employee.

From our reading of the statements we do not believe that Senator Bruce's references to a grandfather clause reflect any legislative

intent to exempt those nurses prior to July 1, 1976, from the requirement of obtaining a school service personnel certificate before being eligible for tenure and other privileges and rights of holders of teaching certificates. Rather, in our view, Senator Bruce's references to a grandfather clause in the context in which it is stated imply that those nurses already possessing school service personnel certificates at the time section 10—22.23 went into effect constituted their certified status.

Moreover, that our interpretation of Senator Bruce's comments is reasonable is further supported by a comment of Representative Richard Mugalian, the House sponsor of the amendment to section 10—22.23, who stated: "This Bill is prospective and those who are already school nurses need not qualify but it is expected that all of them will want to." (79th Ill. Gen. Assem., House Proceedings, June 9, 1975, at 178.) We believe this comment implies the legislation was designed to exempt those nurses hired prior to July 1, 1976, from having to qualify for a school service personnel certificate but that with the passage of the legislation it was expected that they would desire to qualify and to become certified in order to acquire the privileges and rights which attach to such a certificate. At any rate, even if our interpretation of the statements of the legislators was also incorrect and we were to conclude instead that the legislative intent was to permit nurses employed before July 1, 1976, who were not certified, to continue working in the district that employed them and to be able to move to other districts that employed them and to be able to move to other districts without obtaining certificates, this conclusion would not mean that these nurses were to be considered automatically eligible for tenure.

Additionally, we find that the time, effort, and money expended by plaintiff in completing her bachelor of science degree after she learned of the amendment to section 10—22.23 to be indicative of the fact that she believed her employment as a school nurse prior to July 1, 1976, did not automatically qualify her for certification under section 21—25. Furthermore, certification without fulfilling the qualifications of section 21—25 would be blatantly unfair to those nurses who obtained their bachelor's degree for the specific purpose of qualifying for a school service personnel certificate and the rights and privileges that accrued therefrom.

■ Under our interpretation of section 10—22.23, plaintiff did not become certified until she completed her bachelor's degree, applied for a school service personnel certificate in 1977, and was issued the same. A teacher, or a nurse as in the instant case, is tenured only

as a certified employee of the school district. (*School Directors of District U-46 v. Kossoff* (1981), 95 Ill. App. 3d 26, 29, 419 N.E.2d 658.) Thus, plaintiff could not have entered into contractual continued service, or tenure, at the beginning of the 1976-77 school year since she was not yet certified at that time.

Moreover, once certified, plaintiff would not have entered into contractual continued service until she had been employed as a full-time school nurse for a probationary period of two consecutive school terms. Since plaintiff did not possess her school service personnel certificate until the beginning of the 1977-78 school term, she would not have been eligible to enter upon contractual continued service until the beginning of the 1979-80 school term. As Judy Grosklag, having been hired for the 1976-77 school term, was eligible for contractual continued service at the beginning of the 1978-79 school term, the defendant acted appropriately in reducing plaintiff, who had less seniority, to a part-time position rather than Grosklag. Accordingly, the trial court did not err in finding that plaintiff did not automatically become certified by virtue of the 1975 amendment to section 10—22.23 and therefore did not enter into contractual continued service at the beginning of the 1976-77 school term.

Next, plaintiff contends that even if this court finds that Grosklag entered into contractual continued service before plaintiff, plaintiff should not have been reduced to a part-time position before Grosklag since plaintiff had more years of "continuing service" than Grosklag. Plaintiff bases this contention on her interpretation of a portion of section 24—12 of the School Code, which provides: "As between teachers who have entered upon contractual continued service, the teacher or teachers with the shorter length of *continuing service with the district* shall be dismissed first ***." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 122, par. 24—12.

Plaintiff maintains that the phrase "continuing service with the district" refers to the length of one's employment within a school district and not to the number of years as a certified teacher. Therefore, since plaintiff was first employed by defendant in 1974, two full years before Grosklag, Grosklag should have been dismissed before plaintiff. To uphold this interpretation this court would have to find, as plaintiff asserts, that section 24—12 contains two separate terms, "contractual continued service" and "continuing service with the district," and that the terms bear no relationship to each other. We find this assertion to constitute a complete misinterpretation of the plain language of the statute.

In construing a statute the court should examine the statu-

tory language in its context as well as its purpose. (*Oberman v. Byrne* (1983), 112 Ill. App. 3d 155, 162, 445 N.E.2d 374.) An examination of the context in which the phrase "continuing service with the district" is used, as well as the general context of section 24—12, clearly indicates that the phrase refers to teachers who have entered into contractual continued service, or tenure, and does not refer to those who may have been teaching longer but were not tenured. Moreover, if the phrase meant otherwise, as plaintiff contends, *i.e.*, that it refers to the continuing service of *any* teacher, nontenured as well as tenured, there would be no reason for the legislature to also include within section 24—12 a provision providing that before a teacher in contractual service is removed or dismissed "the board shall first remove or dismiss all teachers who have not entered upon contractual continued service." Ill. Rev. Stat. 1983, ch. 122, par. 24—12.

█ Moreover, the primary purpose of the tenure provisions of the School Code, such as section 24—12, is to grant tenured teachers priority over nontenured teachers, and as between tenured teachers, to give priority to those with the longer continuing service. (*Birk v. Board of Education* (1984), 104 Ill. 2d 252, 257, 472 N.E.2d 407; Ill. Rev. Stat. 1983, ch. 122, par. 24—12.) A tenured teacher is entitled to a reading of section 24—12 which is consistent with its primary purpose of protecting those who have qualified for its protections. (104 Ill. 2d 252, 257.) Thus, plaintiff's interpretation of "continuing service in the district" cannot prevail, as it is strained and would effectively eviscerate both the plain meaning and the intent of section 24—12 of the School Code.

█ A tenured teacher, in contractual continued service, is one who has been employed as a full-time teacher for a probationary period of two consecutive yearly school terms without receiving a notice of dismissal. (*Evans v. Benjamin School District No. 25* (1985), 134 Ill. App. 3d 875, 878-79, 480 N.E.2d 1380.) Although plaintiff first became employed by the defendant in 1974, she did not become certified until 1977 and did not enter upon contractual continued service until the beginning of 1979-80, the point at which she had completed the required two-year probationary period. Moreover, that the 1977-78 and 1978-79 school terms constituted plaintiff's two-year probationary period cannot be denied by plaintiff. On the bottom of plaintiff's 1977-78 contract appear the words "1st Year Probationary Contract." At the bottom of plaintiff's 1978-79 contract appear the words "2nd Year Probationary Contract." These contracts were acknowledged and signed by plaintiff, and we consider this action indicative of plaintiff's knowledge and acceptance that these periods were probationary

years.

■■ Since Grosklag was hired by defendant in 1976, served her two-year probationary period during the 1976-77 and 1977-78 school terms, and, thus, entered contractual continued service at the beginning of the 1978-79 school term, she clearly had the higher seniority of contractual continued service when the defendant determined in 1983 that it would be necessary to reduce one of the district's school nurse from full-time status to part-time status. At the time of the defendant's decision, Grosklag was in her fifth year of contractual service whereas plaintiff was in her fourth year of contractual continued service where plaintiff was in her fourth year of contractual continued service. Section 24—12 of the School Code mandates contracts that as between teachers who have entered into contractual continued service, the teacher with the shorter length of continuing service with the school district must be dismissed first when any reduction in the extent of employment is required. Thus, the defendant was compelled to follow the seniority requirements of this section and reduce plaintiff rather than Grosklag to a part-time position. We conclude that the trial court's determination that Grosklag had more contractual continued service with the school district than did plaintiff was correct.

In her third contention, plaintiff argues that the trial court erred in granting summary judgment for the defendant on count II of plaintiff's complaint. Count II of plaintiff's complaint alleged that defendant should be equitably estopped from asserting that a nurse hired after plaintiff was more senior than plaintiff within the meaning of section 24—12 of the School Code. In support of this claim, plaintiff alleged that she met with Dr. James Clark, superintendent of District 101, in June 1976 to determine if it was necessary that she complete the requirements for her bachelor's degree that summer so that she would be certified at the beginning of the 1976-77 school term. Plaintiff claimed that Dr. Clark assured her that it was not necessary for her to become certified by the beginning of the term and that, relying on this representation, she did not complete her degree requirements during the 1976 summer. According to plaintiff, had she completed her degree that summer, she would have had more seniority than Judy Grosklag and would not have been reduced to a part-time position.

Defendant responded to the allegations in count II of plaintiff's complaint with the affidavit of Dr. Clark. In his affidavit Clark stated that he called no specific details of a conversation he had with plaintiff concerning her employment for the 1976-77 school year but that it was not unlikely that he would have told plaintiff that it was not nec-

essary for her to have a school service personnel certificate to continue her employment for the 1976-77 term.

■■■ Plaintiff contends that two different versions of Clark's response to plaintiff's inquiry exist and that they constitute an issue of material fact which should have precluded the trial court from granting summary judgment. We do not agree. A motion for summary judgment can be granted where the pleadings, affidavits, depositions, and other documents demonstrate that there exists no genuine issue of material fact which would warrant trying the case. (*Dale v. Groebe & Co., Realtors* (1981), 103 Ill. App. 3d 649, 652, 431 N.E.2d 1107.) Our examination of these documents, in particular plaintiff's complaint and affidavit and Clark's affidavit, reveal that plaintiff's version of Clark's response to her inquiry does not substantially differ from Clark's version. Plaintiff's complaint and Clark's affidavit indicate that Clark merely assured plaintiff that she did not have to be certified by the beginning of the 1976-77 school term. Plaintiff's documents do not reveal that Clark indicated that she need not become certified for any reason at all, nor does it so imply, as plaintiff asserts in her brief. Consequently, we believe that no issue of material fact existed as to the substance of the conversation between Clark and plaintiff and that, therefore, summary judgment would appear to have been an appropriate vehicle for resolving count II.

The sole function of this court in reviewing a trial court's entry of a summary judgment is to determine whether the trial court correctly ruled that no genuine issue of material fact had been raised, and if none was raised, whether judgment was correctly entered for the moving party as a matter of law. (*Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 21, 414 N.E.2d 865.) As we have found that count II raised no issue of material fact, we next consider whether summary judgment was correctly entered for defendant as a matter of law, *i.e.*, whether the trial court correctly found that count II of plaintiff's complaint did not state a cause of action in estoppel.

■■■ ■ Promissory estoppel is an equitable device invoked to prevent an individual from being injured by a change in position made in reasonable reliance on another's conduct. (*Kulins v. Malco, A Microdot Co.* (1984), 121 Ill. App. 3d 520, 527, 459 N.E.2d 1038.) A cause of action in promissory estoppel consists of the following elements: (1) an unambiguous promise; (2) reliance thereon by the party to whom the promise was made; (3) the reliance is expected and foreseeable by the party making the promise; and (4) the party to whom the promise is made relies upon the promise to his detriment. (*Bolden*

*v. General Accident, Fire & Life Assurance Corp.* (1983), 119 Ill. App. 3d 263, 266, 456 N.E.2d 306.) Here, as defendant contends, the allegations set forth within count II of plaintiff's complaint do not contain an unambiguous promise by Dr. Clark to the plaintiff or any allegation that any promise by Dr. Clark caused a reliance by plaintiff to delay the obtaining of her degree and, thus, her school service personnel certificate, by one year. Moreover, plaintiff's deposition shows that her delay in completing her degree in the summer of 1976 was strictly her own personal choice and that, had she so chosen, she could have completed her degree at that time. The party claiming estoppel bears the burden of establishing it by clear, concise, and unequivocal evidence. (*Johnson v. Security Insurance Co.* (1985), 135 Ill. App. 3d 690, 694, 481 N.E.2d 1263.) Plaintiff has failed to meet her burden in the case at bar.

We note that in plaintiff's reply brief she argues that the proper vehicle for defendant's allegation that plaintiff did not state a cause of action in count II was a motion to dismiss and not a motion for summary judgment and, thus, the trial court erred in granting summary judgment for defendant on count II. Since this issue was never raised in the trial court we will not consider it here, as an issue not presented to or examined by the trial court cannot be considered for the first time on review. *Cardamone v. Allstate Insurance Co.* (1977), 49 Ill. App. 3d 435, 441, 364 N.E.2d 460.

■ Plaintiff's last contention is that the trial court erred in holding that defendant did not breach the collective-bargaining agreement between the defendant and the Batavia Education Association when defendant placed plaintiff at an improper step on the agreement's salary schedule. Under the terms of the collective-bargaining agreement, those personnel employed by defendant and governed by the agreement are designated as "staff members." A staff member is defined as "any employee of the school district who holds a valid certificate issued by the Teacher Certification Board." Thus, until plaintiff received her school service personnel certificate in 1977, she was not considered a staff member of the district and was not entitled to placement on the agreement's salary schedule.

It is plaintiff's position, however, that after she received her certificate in 1977 defendant placed her on the salary schedule without giving her any credit for the three previous years that she had worked for the defendant. Plaintiff maintains that she should have been classified as being on scale I, step 4, and paid $11,024 rather than being placed on scale I, step 1, and paid $9,900. Plaintiff bases this assertion on the fact that a staff member's placement on the sal-

ary schedule depends on the individual's number of years of "credible experience" and "academic training" as noted on the "Assignment and Salary Data Sheet" issued to a staff member at the beginning of each school term. The sheet was apparently issued for the purpose of determining if a staff member agreed with the data represented on his or her sheet, as at the bottom of each data sheet received by plaintiff for the school years 1977-78 through 1982-83 the following statements appeared: "This statement should be examined by the employee for error. It will be considered correct unless the Office of Superintendent is notified to the contrary [by a given date]."

We find convincing defendant's argument that plaintiff failed to disagree, object, or notify defendant that her salary was improper as designated on the assignment and salary data sheets she received for the school terms 1977-78 through 1982-83. Rather, for six years she accepted her placements on the salary schedule and did not apparently raise any contention of error until after she received notice of honorable dismissal on March 23, 1983. In our view, plaintiff's failure to act in this regard substantially weakens plaintiff's contention regarding improper placement on the salary schedule.

Nevertheless, we address plaintiff's assertion that her "credible experience" mandated that she should have been given credit for the three previous years she worked for the defendant before her certification. If she had been given such credit, she would have been placed at scale I, step 4, rather than scale I, step 1. Plaintiff maintains that this assertion is based upon an interpretation of the bargaining agreement, or contract, and not upon an application of the School Code. An examination of the bargaining agreement, however, shows that to be eligible for placement on the salary schedule an employee had to be considered a "staff member." Since an individual had to be certified before he or she could be classified as a staff member, we find it only logical that the credible experience for which a staff member was to be given credit in determining his or her placement on the salary schedule is that credible experience earned as a staff member. Since plaintiff did not qualify as a staff member until 1977, she would not have possessed, prior to the 1977-78 school term, any credible experience as a staff member under the terms of the bargaining agreement. Consequently, defendant's placement in 1977 at scale I, step 1, on the agreement's salary schedule was proper and did not constitute a breach of the collective-bargaining agreement between defendant and the Batavia Education Association. We note here, in passing, that plaintiff at her deposition admitted that when she was first placed on the salary schedule for 1977-78, she did receive an increase over her

previous salary. Arguably, that increase in itself, although placing her only at scale I, step 1, of the salary schedule established by the bargaining agreement, adequately reflected any credible experience for which she maintains, under her position here, that she should have gotten credit.

Finally, we note that plaintiff's reliance on an arbitration hearing involving a school nurse (*Faculty Association of District 205 v. Thornton Township High Schools*, AAA Case No. 51 39 0365 81 B (195) (Malin, Arb.)), to support her argument that her salary placement should have been based on all the years she served in the district rather than just those years she served since certification is misplaced. As defendant points out, the employment history of the school nurse involved in the arbitration case is not analogous to the facts in the instant case. Consequently, we see no reason to attempt to compare the facts of that case with the case at bar.

Therefore, based on all the reasons set forth above, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

UNVERZAGT and LINDBERG, JJ., concur.