PAUL P. GILL, County Clerk, *et al.*, Appellees, v. JEF-
FERY C. MILLER, Director of Public Aid, *et al.*, Ap-
pellants.

*Opinion filed January 24, 1983.*

Tyrone C. Fahner, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for the People.

Leslie R. Landis, of Chicago, for intervenor-appellant Illinois Coalition Against Domestic Violence.

Daniel D. Doyle, State's Attorney, of Rockford (Patrick J. Winn, Assistant State's Attorney, of counsel), for appellees.

JUSTICE WARD delivered the opinion of the court:

This appeal is from a summary judgment that the funding provisions of Public Act 82—645, "An Act in relation to domestic relations and domestic violence shelters and service programs" (Ill. Rev. Stat. 1981, ch. 40, par. 2401 *et seq.*) (hereafter the Act) are unconstitutional. The judgment was entered in the circuit court of Winnebago County following an action brought by Paul P. Gill, the county clerk of Winnebago County, and Ronald Kotche, the clerk of the circuit court of Winnebago County. Appeal was taken directly to this court under Rule 302(a) (73 Ill. 2d R. 302(a)) by Jeffery C. Miller, the Director of the Department of Public Aid, and the Il-

linois Coalition Against Domestic Violence, a not-for-profit corporation that the circuit court allowed to intervene.

The Governor signed the Act into law on September 24, 1981. It became effective on January 1, 1982. The Act provides that the Department of Public Aid (the Department) shall administer or provide for the administration of shelters and service programs for victims of domestic violence. The statute states that the Department shall provide for the funding of such shelters and programs from the Domestic Violence Shelter and Service Fund (the Fund).

The Act amended section 3 of "An Act to provide for the fees of the sheriff, recorder of deeds and county clerk in counties of the third class" (Ill. Rev. Stat. 1981, ch. 53, par. 73) and section 18 of "An Act concerning fees and salaries, and to classify the several counties of this state with reference thereto" (Ill. Rev. Stat. 1981, ch. 53, par. 35). These amendments increase by $10 the fees that are charged by county clerks for the issuance of marriage licenses, and provide that "$10 [of that fee] shall be paid into the *** Fund." Too, the Act amended sections 27.1 and 27.2 of "An Act to revise the law in relation to clerks of courts" (Ill. Rev. Stat. 1981, ch. 25, pars. 27.1, 27.2) to provide that $5 of the $45 fee charged by circuit court clerks for the filing of a dissolution of marriage action "shall be paid into the *** Fund."

The Act amended, too, section 1.2f of "An Act to revise the law in relation to county clerks" (Ill. Rev. Stat. 1981, ch. 35, par. 1.2f). The Act provides:

"Pursuant to 'An Act in relation to domestic relations and domestic violence shelters and service programs', enacted by the 82nd General Assembly, the county clerk shall deposit in the Domestic Violence Shelter and Service Fund, monthly by the 10th day of the month following, certain fees derived from marriage licenses and mar-

riage dissolution cases."

The Winnebago county officers brought this action on January 4, 1982, almost immediately after the Act took effect. Their complaint alleged that the Act was unconstitutional because it provided that "the county clerk shall deposit" the fees into the Fund. The officers pointed out that the Constitution of Illinois provides:

"Compensation of officers and employees and the office expenses of units of local government shall not be paid from fees collected. *Fees may be collected as provided by law and by ordinance and shall be deposited upon receipt with the treasurer of the unit.* Fees shall not be based upon funds disbursed or collected, nor upon the levy or extension of taxes." (Emphasis added.) Ill. Const. 1970, art. VII, sec. 9(a).

The circuit court held the statute unconstitutional on May 28, 1982. Pursuant to an order entered by the circuit court, the plaintiffs, the circuit court clerk and the county clerk, have continued to collect the fees specified in the Act. By the court's order, the portion of those fees which the Act directs to be paid into the Fund has been held in an escrow account pending this appeal.

After the court had held the Act to be unconstitutional, the legislature repealed the section that called for the county clerk to deposit the fees into the Fund. (Pub. Act 82—888, "An Act to amend 'The Illinois Domestic Violence Act', approved September 24, 1981, and other Acts herein named," sec. 2 (eff. Aug. 5, 1982) (1982 Ill. Leg. Serv. 2021 (West)).) In its place, the legislature added section 3.1 to the Act (to be codified as Ill. Rev. Stat., ch. 40, par. 2403.1). The new section provides:

"Each circuit and county clerk shall deposit with the county treasurer, in accordance with Section 2 of 'An Act to provide for the timely deposit of fees collected pursuant to law by any elected or appointed official of local government', approved September 1, 1972, all fees or portions of fees collected pursuant to law, which are designated for payment into the Domestic Violence Shelter

and Service Fund. The county treasurer shall, monthly, by the 10th day of the month following receipt, remit the amounts so deposited to the State Treasurer, who shall deposit such amounts into the Domestic Violence Shelter and Service Fund in the State treasury." Pub. Act 82—888, sec. 2.

The amendment was approved on August 5, 1982, and took effect from that date. Involved here is the disposition to be made of the moneys collected between the effective date of the Act and the effective date of the amendment.

It is fundamental that in construing a statute a court is to ascertain and give effect to the legislature's intent. (*People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 369.) It will be presumed that in enacting a statute the legislature acted in the light of the provisions of the Constitution and intended to enact a statute not inconsistent with the Constitution. (*Illinois Crime Investigating Com. v. Buccieri* (1967), 36 Ill. 2d 556, 561 *cert. denied* (1967), 389 U.S. 848, 19 L. Ed. 2d 117, 88 S. Ct. 75.) Accordingly, we must construe the Act here as not offending the Constitution, provided of course that the construction is reasonable. *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Com.* (1969), 42 Ill. 2d 385, 389.

In ascertaining the legislature's intent we should consider the statute in its entirety, noting the subject it addresses and the legislature's apparent objective in enacting it. (*Chastek v. Anderson* (1981), 83 Ill. 2d 502, 510-11.) Where the letter of the statute conflicts with the spirit of it, the spirit will be controlling when construing the statute's provisions. (*Inskip v. Board of Trustees* (1962), 26 Ill. 2d 501, 510.)

Considering these principles of construction, we judge that Public Act 82—645 is constitutional. Undoubtedly the provision that the county clerk rather than the county treasurer should deposit the fees was simply a legislative inadvertence or mistake. The Act requires the circuit court clerk, not the county clerk, to collect the fees for the filing

of petitions in dissolution-of-marriage cases. The General Assembly certainly did not intend that the county clerk was to deposit fees that the Act provided that the circuit court clerk would charge and collect.

Also, the legislature was certainly aware of our constitution and its requirement that fees collected in the operation of a unit of local government (here, the county) shall be deposited with the unit's treasurer. To implement that constitutional requirement, another statute, "An Act to provide for the timely deposit of fees collected pursuant to law by any elected or appointed official of local government" (Ill. Rev. Stat. 1981, ch. 85, pars. 721, 722), provides: "All elected or appointed officials of units of local government, and clerks of the circuit courts, authorized by law to collect fees which collection is not prohibited by Section 9 of Article VII of the Constitution, shall deposit all such collected fees upon receipt with the county treasurer or treasurer of such other unit of local government, as the case may be; except that such officials may maintain overpayments, tax redemptions, trust funds and special funds as provided for by law or local ordinance."

The legislature's intent, we must presume, was to enact a constitutional statute, and it is also presumed that the legislature was aware of the statute we have just quoted when it provided the Act's funding details. We therefore construe the Act, as originally drafted, to have required that the county treasurer, the constitutionally designated officer, was to deposit the specified portion of the fees into the Fund. We construe that act to have meant that the circuit court clerk and the county clerk were to have deposited the fees with the county treasurer.

Evidence that this construction expresses the legislature's intent can be found in the amendment to the Act, which was approved about seven months after the Act took effect. The amendment provides that the county clerk and the circuit court clerk shall deposit the fees collected

with the county treasurer, and that the county treasurer then shall transfer those moneys to the State Treasurer for deposit into the Fund. Regarding the significance of an amendment to a statute, Sutherland on Statutory Construction states: "If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change [of the original act by the amendment]." (1A A. Sutherland, Statutory Construction sec. 22.31 (4th ed. 1972).) *Cf. Carey v. Elrod* (1971), 49 Ill. 2d 464 *appeal dismissed* (1972), 408 U.S. 901, 33 L. Ed. 2d 327, 92 S. Ct. 2488 (upon concluding that it was through oversight that the legislature, in amending a statute, had deleted a certain provision in the statute, the court deemed it proper in interpreting the amended statute to consider that when the legislature became aware of the deletion, it amended the statute again to restore the deleted provision).

We have here a situation where a legislative intention, otherwise clear, was in part mistakenly or inaccurately stated. Under such circumstances courts have allowed the substitution of language in order to carry out the demonstrable legislative intention, observing, however, when doing so, that this technique of construction is to be exercised with caution. Sutherland on Statutory Construction observes: "A large majority of the cases permit the substitution of one word for another where it is necessary to carry out the legislative intent or express clearly manifested meaning. Although, as one court said, 'it is sometimes called "exceptional construction," and we are not unmindful of the dangers attending the exercise of such powers by the courts. But, properly understood, and exercised with due caution, it is not judicial legislation, but is simply a method of arriving at legislative intent defectively expressed.' " (2A A. Sutherland, Statutory Construction

sec. 47.36 (4th ed. 1973), quoting *Baca v. Board of County Commissioners* (1900), 10 N.M. 438, 442-43, 62 P. 979, 980.) The text further states: "Courts have permitted the substitution of one word for another: where it is necessary to make the act harmonious or to avoid repugnancy or inconsistency, [or] where the word to be substituted is to be found in the *** act as amended *** or by reference to other statutes, [or] where it is obvious that the word used in the act is the result of clerical error, or mistake, [or] where the substitution will make the act sensible, or give it force and effect." 2A A. Sutherland, Statutory Construction sec. 47.36 (4th ed. (1973).

Adhering to the holdings in the majority of jurisdictions, this court has decided that where applying language literally in a clause of an otherwise coherent statute would frustrate the spirit of the statute and the intent of the legislature, language may be disregarded, modified or supplied to give effect to the legislative design. *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Com.* (1969), 42 Ill. 2d 385, 395; *e.g., People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305 (where through oversight the legislature, in amending the Election Code, failed to provide for the continuation of a long-standing procedure for the erasure of names from the voters' register, the court construed the amendment as continuing the procedure); *People ex rel. Barrett v. Anderson* (1947), 398 Ill. 480 (cited by 2A A. Sutherland, Statutory Construction sec. 47.36 (4th ed. 1973)) (the description of territory in the Congressional Reapportionment Act of 1947 as "the village of Stickney" was contrued to mean "the township of Stickney," because a literal reading would have brought about the unintended result of leaving unapportioned the part of the township that was outside of the village).

An opinion given by the Attorney General on December 22, 1981, prior to the effective date of the Act, is in agreement with our construction of the statute. 1981 Ill. Att'y

Gen. Op. 113.

For the reasons given, the judgment of the circuit court holding Public Act 82—645 unconstitutional is reversed. The cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*