KENNETH SWANSON, Plaintiff-Appellee and Cross-Appellant, v. THE BOARD OF EDUCATION OF FOREMAN COMMUNITY UNIT SCHOOL DISTRICT #124, MASON COUNTY, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—84—0758

Opinion filed July 30, 1985.

Heyl, Royster, Voelker & Allen, of Peoria, and Robbins, Schwartz, Nicholas, Lifton & Taylor, of Decatur (Timothy L. Bertschy, Bradford B. In-

gram, and Kevin J. Luther, of counsel), for appellant.

Boggs, Knuppel & Krebaum, P.C., of Havana (William H. Knuppel, of counsel), for appellee.

JUSTICE TRAPP delivered the opinion of the court:

The primary issue addressed in this appeal is the procedural scope of the public hearing afforded a principal facing demotion and reduction in salary. Swanson, plaintiff, argues "public hearing" means "evidentiary hearing." The board of education, defendant, argues "public hearing" means "opportunity to be heard in a public forum." The trial court found the public hearing Swanson received pursuant to section 10–23.8b of the School Code was inadequate. (Ill. Rev. Stat. 1983, ch. 122, par. 10–23.8b.) It ordered the defendant (board) to conduct another hearing. Swanson then asked for a mandatory injunction to compel the board to reinstate him and pay damages. The court denied the injunction. The board appeals the court's initial order. Swanson cross-appeals the determination that he was not entitled to reinstatement and damages.

We reverse because the legislative history of section 10–23.8b indicates an evidentiary public hearing is not statutorily required. Consequently, we affirm the trial court's ruling on the injunction.

Swanson was the principal of Forman Grade School. He had been a principal for over two years and an administrator in the school district for 13 years. On February 20, 1984, the board passed a tentative resolution to reclassify Swanson and assign him to a teaching position, with a concomitant reduction in salary. The board notified Swanson of its decision, including a list of reasons with the notice. Swanson requested and received a list of reasons with the notice. Swanson requested and received a private hearing before the board to discuss the proposed reclassification. The next day the board notified Swanson that its tentative resolution was still in effect.

On March 22, 1984, the board held a public hearing, at Swanson's request. The Board formulated the rules and procedures followed at the hearing. They included: opening remarks by both sides, presentation of the reasons for reclassification, presentation of Swanson's response to the reasons, rebuttal by the board, and closing arguments by both parties. The rules stated that formal rules of evidence were inapplicable and no cross-examination of witnesses or board members would be allowed.

At the hearing, the board's attorney read the reasons for the board's decision. The board presented no other evidence, witnesses, or

information. Swanson was sworn and testified in his own behalf, essentially contradicting the reasons stated for his reclassification. Swanson introduced documents supporting his testimony. Then, Swanson called John Lowey, the superintendent of schools, as a witness. Over Swanson's objection, the board refused to allow Swanson to directly examine or cross-examine Lowey. The attorneys and Swanson then gave closing statements. The board passed the resolution to reclassify Swanson.

On April 26, 1984, Swanson filed a petition for *certiorari* in the circuit court. The petition alleged that the board's actions were not in accord with the statute because the public hearing was inadequate. The board had failed to prove its reasons for reclassification, Swanson denied them, and Swanson had been denied the opportunity to question Lowey.

The circuit court held that the board had not complied with the statute. It interpreted the phrase "public hearing" within section 10—23.8b of the School Code as requiring that Swanson have the opportunity to examine the board and Lowey on the factual basis of their decision. It ordered the board to conduct a public hearing in accord with its decision.

Swanson then filed a motion for reconsideration and for mandatory injunction seeking a declaration that he was still a principal and compensation as such until he was properly reclassified or terminated. The court denied the motion. The parties filed timely notices of appeal.

Section 10—23.8b of the School Code states:

"Reclassification of principals. No principal who has completed 2 or more years of administrative service in the school district may be reclassified by demotion or reduction in rank from one position within a school district to another for which a lower salary is paid without written notice from the board of the proposed reclassification by April 1 of the year in which the contract expires.

Within 10 days of receipt of this notice, *the principal may request and receive a private hearing with the board to discuss the reasons for the reclassification.* If the principal is not satisfied with the results of the private hearing, he may, within 5 days thereafter, *request and receive a public hearing on the reclassification.* Any principal may be represented by counsel at a private or public hearing conducted under this Section.

If the board decides to proceed with the reclassification, it shall give the principal written notice of its decision within 15

days of the private hearing or within 15 days of the public hearing held under this Section, whichever is later. The decision of the board thereupon becomes final.

Nothing in this Section prohibits a board from ordering lateral transfers of principals to positions of similar rank and equal salary." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 122, par. 10—23.8b.)

The notice and time requirements were followed. The extent of the private hearing is not in issue.

The board argues that the phrase public hearing does not mean evidentiary hearing. Swanson's hearing fulfilled the purposes of the public hearing, which are allowing the principal to deal with someone other than the superintendent, forcing the board to deal with him in a public forum, and mitigating any stigma resulting from demotion. The board further argues that the statute, its legislative history, and case law interpreting the statute support its position.

Swanson argues that the public hearing means meaningful hearing. The purpose of the hearing requirement is to allow the principal an opportunity to convince the board that it is wrong. Therefore, the principal may contest the truthfulness of the reasons for reclassification, which should be supported by competent evidence. To be meaningful, the hearing must include an opportunity for the questioning of the superintendent and the board. Swanson argues the legislative history and commonly understood meaning of public hearing support his position.

■■ The first rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Courts consider the statutory language first in determining legislative intent. Where the language is clear, it will be given effect without resort to other sources. (*People v. Boykin* (1983), 94 Ill. 2d 138, 445 N.E.2d 1174; *Gill v. Miller* (1983), 94 Ill. 2d 52, 445 N.E.2d 330; *Silver v. Lee Shell Equipment Corp.* (1961), 31 Ill. App. 2d 266, 175 N.E.2d 287.) Where the language is ambiguous, courts consider the legislative history and purpose of the statute. *People v. Boykin* (1983), 94 Ill. 2d 138, 445 N.E.2d 1174; *Gill v. Miller* (1983), 94 Ill. 2d 52, 445 N.E.2d 330.

Section 10—23.8b provides that a principal with more than two years' administrative service may not be reclassified by demotion or reduction in rank to a position for which a lower salary is paid, without notice and an opportunity for a private or public hearing. The statute provides for both a private hearing and a public hearing before the board. The private hearing is to "discuss the reasons for the

reclassification." If dissatisfied with the results of the private hearing, the principal may request and receive a public hearing "on the reclassification." The principal is entitled to counsel at both hearings. However, the statute does not define or state what procedures are included in the hearings.

■■ Absent statutory definitions, it is assumed that the legislature intended statutory language to have its commonly understood meaning. (*Winks v. Board of Education* (1979), 78 Ill. 2d 128, 398 N.E.2d 823.) However, where a different legislative intent is apparent from the purpose and history of the act, the plain language will not control. *Bodine Electric Co. v. Allphin* (1980), 81 Ill. 2d 502, 410 N.E.2d 828; *Illinois Power Co. v. Johnson* (1983), 116 Ill. App. 3d 618, 452 N.E.2d 347.

■■ If the meaning of the statute is ambiguous, amendments to the original bill during its passage may be used as an aid to construction. (*Scala/O'Brien Porsche Audi, Inc. v. Volkswagen of America, Inc.* (1980), 87 Ill. App. 3d 757, 410 N.E.2d 205.) In determining legislative intent, courts may consider the reason for the law and the evil to be remedied or purpose to be obtained. (*Gill v. Miller* (1983), 94 Ill. 2d 52, 445 N.E.2d 330.) Courts may also consider the entire statutory scheme, construing the statute in a fashion which renders it useful and logical. *People ex rel. Callahan v. Marshall Field & Co.* (1980), 83 Ill. App. 3d 811, 404 N.E.2d 368.

Section 10—23.8b does not define public hearing. Therefore, absent contrary legislative intent, the ordinary meaning of the phrase would control. (*Winks v. Board of Education* (1979), 78 Ill. 2d 128, 398 N.E.2d 823.) Courts considering the meaning of the phrase public hearing have held that it includes notice, the right to counsel, to hear and give testimony, and to cross-examine witnesses. (*Braden v. Much* (1949), 403 Ill. 507, 87 N.E.2d 620; *E & E Hauling, Inc. v. County of Du Page* (1979), 77 Ill. App. 3d 1017, 396 N.E.2d 1260; *People ex rel. Endicott v. Huddleston* (1975), 34 Ill. App. 3d 799, 340 N.E.2d 662; *North State, Astor, Lake Shore Drive Association v. City of Chicago* (1970), 131 Ill. App. 2d 251, 266 N.E.2d 742; *Board of Education v. County Board of School Trustees* (1957), 13 Ill. App. 2d 561, 142 N.E.2d 742.) In this instance, review of the legislative history demonstrates a contrary intent.

Representative Deuster sponsored House Bill 3047, which created section 10—23.8b of the School Code. On June 10, 1975, House Bill 3047 was amended. Deuster, in discussing the amendment and the bill, stated:

"What it does is the Bill, main Bill provides that before you re-

classify a principal they have to give them reasonable advance warning. The original Bill said stating the specific reasons. The phraseology referring to specific reasons has been deleted ***. It has the agreement of the principals and the School Board ***." (House Proceedings On House Bill 3047, at 91, June 10, 1975 (House Proceedings).)

The amendment was suggested by the Illinois Association of School Boards because they felt the specificity requirement might cause litigation. House Proceedings 97, June 13, 1975.

The specific reasons language as it pertained to nontenured teachers had been interpreted as meaning that the reasons must be truthful and contained in the notice. (*Donahoo v. Board of Education* (1952), 413 Ill. 422, 109 N.E.2d 787; *Huettemann v. Board of Education* (1978), 56 Ill. App. 3d 933, 372 N.E.2d 716; *Burns v. Board of Education* (1977), 47 Ill. App. 3d 589, 362 N.E.2d 353; Ill. Rev. Stat. 1983, ch. 122, par. 24—11.) Since this language was excised from the bill at the request of the Illinois Association of School Boards, it can be assumed that the association wished to avoid a similar problem with principals upon reclassification. Therefore, no requirement for specific, truthful reasons exists.

On June 13, 1975, Deuster explained the purpose of the bill. He stated:

"It provides the due process for downstate school principals. A similar Bill providing about the same due process procedures for Chicago principals failed out of the House 137 to 3. *** What the Bill does very basically and simply is to provide that before a principal is reclassified and by demotion or reduction in rank, that three things. One, that he's simply entitled to reasonable advance warning in writing and secondly, if he wants to, he can request a private hearing with the school board. If he's not satisfied with that, a public hearing, but then the decision of the Board is final." House Proceedings 96, June 13, 1975.

Representative Palmer asked whether the board had any discretion about holding a public hearing. Deuster responded:

"Well, this is a due process for the principal, and ah . . . . before the Board's decision is final and it simply means that he has a right to come to the Board and say '*how come you're doing this to me, what are the reasons.*' " (Emphasis added.) House Proceedings 97, June 13, 1975.

■ From the discussion of the purpose of the bill and the inquiry nature of the hearing, it appears a full evidentiary hearing was not

intended. Since the board need not give truthful reasons or specific ones, proving or disproving the reasons would not be helpful. Additionally, reclassification appears to be within the total discretion of the board provided the notice and hearing requirements are met. Public hearing seems synonymous with an opportunity to be heard and to find out why the decision was made. Proceedings in the Senate and in the House after amendment by the Senate support this view.

On June 24, 1975, the Senate amended House Bill 3047. Senator Glass opposed the amendment because it provided "some different procedures which are substantive" to the Bill. (Senate Proceedings on House Bill 3047, at 38, June 24, 1975 (Senate Proceedings).) Senate amendment No. 1 added that no reclassification in rank or grade shall occur absent reasonable advanced notice "stating the specific causes which, if not removed, may result in reclassification." (2 Senate Journal of Ill. 3281 (June 24, 1975).) On June 25, 1975, this language was deleted through amendment No. 2. 2 Senate Journal of Ill. 3497 (June 25, 1975); Senate Proceedings 148, June 25, 1975.

Senator Knuppel explained the purpose of the bill on June 25, 1975. He stated the bill allowed for notice and a public or private hearing.

> "This in no way gives him tenure or anything of this nature. It doesn't guarantee him of security in the position which he's attained but merely gives him the opportunity, first of all, *to a private hearing where he can lay on the table before the board what the problems may or may not be with respect to the reason he's being reclassified or if he feels that he's not received a fair hearing to have a public hearing. At least so that the board members and the people of the community will know whether he has been dealt fairly with. The term reclassified, means the demotion or reduction in rank from one position to another for which a lower salary is paid.*" (Emphasis added.) (Senate Proceedings 153, June 25, 1975.)

Knuppel expressed a concern that the principal have a right to deal with someone other than his immediate supervisor, the superintendent, before reclassification. An amendment restricting the board's discretion in reclassifying was specifically deleted. The House concurred in the amended bill. House Proceedings 59, June 27, 1975.

The legislative history indicates the legislature intended to provide a principal notice and an opportunity to discuss the reclassification with the board, rather than simply with the superintendent. However, the discretion of the board in reclassifying was not restricted, no specific reasons need be given, and a tenure or property interest in

retention was not created. Comments by the House and Senate sponsors indicate public hearing was equated with an opportunity to be heard in a public forum. We note, however, that the sponsors of this bill did not distinguish between the substance of the private hearing and the public one.

Swanson argues that Deuster's statement that the section provides due process supports his position. However, concepts of procedural due process are flexible and depend upon the type of interest which is at risk. (*Powell v. Jones* (1973), 56 Ill. 2d 70, 305 N.E.2d 166.) In the present situation, the principal faces reclassification or demotion, not termination. The principal does not have tenure as a principal.

Also, the statute does provide for procedural safeguards not previously afforded principals. It provides for notice and an opportunity to discuss the reclassification with someone other than the superintendent of schools. The public hearing offers an opportunity to mitigate any damaging effect reclassification may have on the principal's reputation. See *Lyznicki v. Board of Education* (7th Cir. 1983), 707 F.2d 949.

Analysis of sections 10—23.8, 10—23.8a, and 10—23.8b of the School Code (Ill. Rev. Stat. 1983, ch. 122, pars. 10—23.8, 10—23.8a, 10—23.8b) is consistent with, and supports, the conclusions drawn from the legislative history that when the legislature intended that an "evidentiary hearing" be held, it simply said so and made appropriate provisions therefor. The cited sections concern the termination or demotion of various types of administrative officials by the school board.

Section 10—23.8 concerns (1) the board decision not to renew a contract of employment of a superintendent of schools, and (2) the specified times the board is required to give notice of such decision and to state a reason therefor. Upon receipt of the notice, the superintendent may request "a closed session hearing on the dismissal" at which time he may produce evidence and witnesses. There is no provision for a public hearing.

Section 10—23.8a concerns a board decision not to renew a contract of a school principal. Notice of the intention not to renew must be given, but there is no provision in any sense for any form of hearing. Each of the foregoing sections provides that an acceptance of a multiyear contract for employment waives any rights under the provision of the School Code concerning tenure or continued employment.

■ Section 10—23.8b provides for the reclassification of principals who are not under contract. Reclassification is defined as demotion or reduction in rank. Written notice from the board of the pro-

posed reclassification must be provided by a specified time. Thereafter, the principal may request, and receive, a hearing with the board to discuss the reclassification and its reasons. The principal may, if dissatisfied, further request, and receive, a public hearing on the reclassification, at which time he may be represented by counsel. As noted in the legislative history of the section, no charges must be made or proved, or justifying reasons provided. There are thus no questions or issues to be determined at the hearing, either private or public, and the Act provides that the decision of the board becomes final. Thus, the legislature does not contemplate any judicial review.

The provisions with relation to administrative employees of the school district are in dramatic contrast to the requirements when an employee is on tenure or continued service. In such instances, the board is required to adopt a motion establishing specific charges against the teacher. A hearing upon the charges is required, unless specifically waived by the teacher. The hearing is conducted before a hearing officer provided by the State Board of Education under uniform standards of procedure established by that board. There is express provision that witnesses may be subpoenaed and express provision for cross-examination of witnesses and the offering of evidence. The testimony is taken under oath and a report of proceedings required, and such proceedings are subject to administrative review in the courts.

It thus appears that the legislature has intended to provide, and has in fact provided, separate and discrete methods in dealing with the relationships between administrative officials of the school district and the tenured teachers, and, from the specific terms of the several statutes, it is clear that, as to administrative officials, the legislative use of the word "hearing" does not contemplate an "evidentiary hearing" or an adversary proceeding with a burden of proof to support the decision of the board.

Swanson relies upon *People ex rel. Endicott v. Huddleston* (1975), 34 Ill. App. 3d 799, 340 N.E.2d 662, arguing it presents a situation similar to the instant situation. Therefore, Swanson argues *Endicott* should be followed by this court. Although we agree that the factual circumstances are somewhat similar, the legislative history and statutory language distinguish *Endicott* from the present situation.

Endicott, a superintendent of assessments, was not reappointed to his position. Pursuant to the Revenue Act of 1939, the board of county commissioners held a public hearing. The statute in *Endicott* did not define the phrase "public hearing." (Ill. Rev. Stat. 1973, ch. 120, par. 484a.) However, it stated the "county board shall grant him

a public hearing on the question of why he is not to be reappointed." (Ill. Rev. Stat. 1973, ch. 120, par. 484a.) The board of county commissioners established the rules for Endicott's hearing, which consisted of a reading of the charges by the board of county commissioner's attorney. Neither Endicott nor his counsel were allowed to speak.

The trial court dismissed Endicott's *mandamus* petition which sought to compel the commissioners to give him a public hearing. He argued a public hearing included the right to appear and give evidence and to hear and examine witnesses testifying for the commissioners. On appeal, the court agreed. It noted that it could find no legislative intention to give the phrase any meaning other than its accepted judicial definition. (*People ex rel. Endicott v. Huddleston* (1975), 34 Ill. App. 3d 799, 803, 340 N.E.2d 662, 665.) In this case, as discussed previously, the legislative history demonstrates a contrary legislative intent.

Endicott also sued in the Federal court, alleging violations of constitutionally protected property and liberty interests. The court held that Endicott did not have a constitutionally protected property interest. His liberty interest in clearing his name was adequately protected by the hearing after remand. In it Endicott had an opportunity to present and cross-examine witnesses. (*Endicott v. Huddleston* (7th Cir. 1980), 644 F.2d 1208, 1212.) Swanson's statutory rights are in question in the instant case.

We note that the statute in *Endicott* in effect defines the public hearing. The statute states the commissioners must give the county assessor a public hearing on the "question of why" he is not being reappointed. The phrasing "question of why" sets forth the purpose of the hearing. From the language, the issue is a dispute of the reasons for not reappointing the county assessor. The commissioners therefore must provide reasons for its decision. Since an issue exists as to the reasons for the commissioner's decision, the statutory language implies a right to question or contest those reasons. Ill. Rev. Stat. 1973, ch. 120, par. 484a.

In contrast, the instant statute provides the private hearing is to discuss the school board's reasons for reclassifying a principal. The statute does not set forth any difference between the public and private hearing. It states the public hearing is "on the reclassification." No issue exists as to the validity of the reasons. The statutory language does not imply a right to contest the reasons but merely provides for their discussion. This interpretation is consistent with the legislative history and the distinct levels of hearings presented in the School Code.

For the above reasons, the circuit court's interpretation of "public hearing" is reversed. Its decision denying the injunction is affirmed.

Affirmed in part; reversed in part.

WEBBER and MORTHLAND, JJ., concur.