RONALD R. NORRIS *et al.*, as Trustees of the Board of Trustees of the Policemen's Annuity and Benefit Fund, *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 1—90—1559

Opinion filed June 22, 1992.

Richard J. Puchalski, of Chicago, for appellants.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lynn K. Mitchell and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE MANNING delivered the opinion of the court:

This is an appeal from a trial court order granting the defendant City of Chicago's motion for judgment on the pleadings. The plaintiffs filed an action to compel the City of Chicago (City) to increase its contributions to the pension fund to cover hours worked by off-duty Chicago police officers under the voluntary Special Employment Program (SEP) of the Chicago police department (CPD). The trial court held that the City was not required to increase its contribution to the pension fund and also denied plaintiffs' cross-motion for summary judgment.

In February 1989, the plaintiffs, trustees and beneficiaries of the Policemen's Annuity and Benefit Fund of the City of Chicago, filed an action for declaratory judgment against defendants City of Chicago, Chicago Housing Authority (CHA), and Chicago Transit Authority

(CTA). The basis of plaintiffs' complaint was that the defendant was legally obligated to make additional pension contributions to the CPD pension fund because of the SEP. They also alleged that the defendant breached its written contracts which required payment of pension benefits to the pension fund.

In April 1989, defendant filed its answer and affirmative defenses. The defendant admitted that under the SEP only police officers were employed and that they remained under the supervision and control of the CPD. The defendant also admitted that the officers used the CPD's equipment, and that all the officers were paid out of the CPD's payroll system, but that the pay was taken out of funds advanced to the defendant by the cooperating agencies. The defendant asserted that the funds did not come out of its annual appropriation for police salaries. The arrangement for payment under the SEP was that the defendant paid the officers for SEP hours, and the CHA and CTA reimbursed the defendant for those payments, along with an additional 10%. The defendant maintained that the additional amount was to cover costs for court appearances related to SEP work for time lost and medical benefits paid by the defendant due to an injury any officer received while engaged in SEP work, and for administrative overhead.

On January 18, 1990, plaintiffs filed their first amended complaint for declaratory judgment. In count II of the amended complaint they alleged that the unpaid contribution amounted to $1 million. In count III plaintiffs alleged that contractual provisions in the intergovernmental cooperative agreement between the CPD, the CHA and CTA required the defendant to pay an additional 10% of monies paid by CHA and CTA into the pension fund. The CHA and CTA were dismissed as party defendants to the action, and on October 12, 1989, plaintiffs filed a cross-motion for partial summary judgment.

On May 24, 1990, the court granted defendant's motion for judgment on the pleadings and denied plaintiffs' cross-motion for partial summary judgment. Plaintiffs argue that the trial court erred in granting defendant's motion, specifically contending that under the well-established principle of statutory construction, a reading of the statute at issue here supports their theory that defendant is liable.

The statute at issue here is the Illinois Pension Code (Ill. Rev. Stat. 1989, ch. 108½, par. 1—101 *et seq.*). Plaintiffs maintain that sections 5—114, 5—168, 5—176, 5—177 and 5—225 read together make clear that the legislature intended that it was mandatory for the City of Chicago to fund and finance police pensions for the City's police

based on the wages earned from the SEP. In pertinent part these sections state:

"5—114. Salary. ***

* * *

(d) Beginning July 1, 1933, annual salary of a policeman appropriated for members of his rank or grade in the city's annual budget or appropriation bill, subject to the following:

(1) For age and service annuity, minimum annuity and disability benefits, the amount of annual salary without limitation." Ill. Rev. Stat. 1989, ch. 108½, par. 5—114.

"5—168. Financing. The city shall levy a tax annually upon all taxable property therein for the purpose of providing revenue for the fund.

The tax shall be at a rate that will produce a sum which, when added to the amounts deducted from the policemen's salaries, is sufficient for the purposes of the fund." Ill. Rev. Stat. 1989, ch. 108½, par. 5—168.

"5—176. Cost of administration. The city shall contribute the entire costs of administration of the fund from revenue derived from the taxes authorized to be levied for the fund." Ill. Rev. Stat. 1989, ch. 108½, par. 5—176.

"5—177. Other city contributions—Estimates. The board shall estimate the amount required each year to be contributed by the city to pay all annuities and benefits hereunder and administrative expenses. All amounts shall be paid annually by the city into the fund from taxes levied and collected for the fund." Ill. Rev. Stat. 1989, ch. 108½, par. 5—177.

"5—225. Duty to comply with Article. It shall be the duty of all officers, officials, and employees of such city to perform any and all acts required to carry out the intent and purposes of this Article." Ill. Rev. Stat. 1989, ch. 108½, par. 5—225.

Plaintiffs maintain that inherent in the SEP is additional risk and liability to the pension fund, and that under article 5 the defendant is obligated to make additional pension contributions. Plaintiffs argue that the determination of the intent of the General Assembly is best evidenced by the language the legislature used. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 485 N.E.2d 1076.) Where the language of the statute is unambiguous, a court must enforce the law as enacted without considering other aids. (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 447 N.E.2d 394.) If the language is clear and unambiguous, and if the legislative intent can be ascertained

therefrom, it must prevail and will be given effect without resorting to other aids for construction. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 393.

Plaintiffs also maintain that section 5—255 mandates that City officials perform any and all acts required to carry out the intent and purposes of article 5 of the Pension Code. Plaintiffs assert that under section 5—177 the City is obligated to finance and fund the police pension fund based upon the needs and requirements of the fund.

Defendant contends that the trial court properly granted judgment on the pleadings because neither the Pension Code nor the cooperative agreements entitle plaintiffs to the relief they seek. Defendant asserts that the Pension Code unambiguously requires the City to contribute certain amounts into the pension fund. Those amounts are all calculated as percentages of the "salary" paid to each police officer. Of each salary, payment is made into the fund for age and service annuities. (Ill. Rev. Stat. 1989, ch. 108½, par. 5—169.) Specifically, the City is to contribute 9⅚% of each salary payment into the fund, and 2% of each salary payment into the fund for widows' annuities (Ill. Rev. Stat. 1989, ch. 108½, par. 5—170), and $224,000 into the fund for death benefits (Ill. Rev. Stat. 1989, ch. 108½, par. 5—171).

The City argues that the wages paid for SEP work did not constitute "salary" within the statutory definition, because the source of the SEP wages was not the City's annual appropriations. The wages came from money prepaid to the City by the CHA and the CTA, pursuant to the intergovernmental cooperative agreement. The City relies on section 5—114(d) of the Pension Code, where "salary" is defined as the "annual salary of a policeman appropriated for members of his rank or grade in the city's annual budget or appropriation bill." (Ill. Rev. Stat. 1989, ch. 108½, par. 5—114(d).) The City maintains that plaintiffs cannot overcome the plain meaning of specific statutory language, and that where the language is unambiguous, a court must enforce the law as enacted without considering other aids. *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151, 485 N.E.2d 1076; *Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 133, 469 N.E.2d 393.

Defendant additionally points out that under the statute the board of trustees has the discretion to determine the amount needed for the fund and that plaintiffs did not allege that the City failed to contribute the amount that the board requested.

Plaintiffs make a second argument that the trial court erred in denying their cross-motion for summary judgment on the theory on con-

tractual liability. Plaintiffs cite to paragraph 8 of the agreement between the CTA and the City, which provides:

"8. *Reimbursement by CTA*. Provided that in no event shall CTA reimburse the Chicago Police Department more than $5,000,000 per annum, CTA shall be responsible for reimbursing Chicago Police Department for all wages paid under paragraph 7 herein, including any retroactive increase, premium and/or overtime pay, if any, plus ten percent (10%) of those wages, said ten percent (10%) being deemed to cover:

(a) Pay for court appearances relating to work on the CTA special detail;

(b) Pay for time lost and medical benefits paid due to injury while engaged in work as part of a CTA special detail;

(c) Administrative overhead."

Similarly, paragraph 7 of the agreement between the City and the CHA provides:

"7. Reimbursement by CHA. Provided that in no event shall CHA reimburse the Chicago Police Department more than $1,484,032 for the remainder of this calendar year, CHA shall be responsible for reimbursing Chicago Police Department for all wages paid under paragraph 6 herein, including any premium and/or overtime pay, if any, plus ten percent (10%) of those wages, said ten percent being deemed to cover:

(a) Pay for court appearances relating to work on the CHA special detail;

(b) Pay for time lost and medical benefits paid due to injury while engaged in work as part of a CHA special detail;

(c) Administrative overhead."

Plaintiffs argue that, based on the theory of third-party beneficiary, the CHA and CTA contemplated that payments were to be made to the pension fund for the benefit of police officers who were killed or injured. Thus, they maintain that the pension fund was a third-party beneficiary under paragraph 8 of the CTA agreement and paragraph 7 of the CHA agreement.

Defendant counters by arguing that the pension fund is not a party to this action and that plaintiffs lack standing to raise such a claim. Defendant cites to section 1—115 (Ill. Rev. Stat. 1989, ch. 108½, par. 1—115), which states in pertinent part:

"A civil action may be brought by the Attorney General or by a participant, beneficiary or fiduciary in order to:
***

(b) Enjoin any act or practice which violates any provision of this code."

Defendant further maintains that because the pension fund was not a party to the intergovernmental cooperative agreement, it has no standing to raise a pension fund claim. Defendant asserts that a third party's right to benefit from a contract exists only if the contracting parties have manifested in their contract an intention to confer a benefit upon the third party. This intention must affirmatively appear from the language of the instrument when properly interpreted and construed. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 54, 421 N.E. 2d 182.) Defendant contends that the 10% excess reimbursement was meant to cover the City's administrative overhead, court costs, lost time and medical benefits attributable to the SEP. Thus, it was not to benefit the pension fund.

The fundamental rule of statutory construction is to give effect to the intent of the legislature. (*State v. Mikusch* (1990), 138 Ill. 2d 242, 562 N.E.2d 168.) If the meaning of a statute or ordinance is clearly expressed in the language of the statute or ordinance, the courts cannot imply any other meaning. *Triple A Service, Inc. v. Rice* (1989), 131 Ill. 2d 217, 545 N.E.2d 706.

▇ In this case, plaintiffs rely on sections 5—114, 5—168, 5—176, 5—177 and 5—225 of the Pension Code in asserting that defendant was obligated to contribute additional amounts to the pension fund. However, section 5—168 states that the board has the discretion to determine what amount of contribution by the City to the fund will yield an amount "sufficient for the purposes of the fund." (Ill. Rev. Stat. 1989, ch. 108½, par. 5—168.) Further, sections 5—169, 5—170 and 5—171 establish what percentage of each salary paid to an officer shall be contributed into the fund for age and service annuities and for widows' annuities. Moreover, "salary" is defined by the Pension Code as the "annual salary of a policeman appropriated for members of his rank or grade in the city's annual budget or appropriation bill." (Ill. Rev. Stat. 1989, ch. 108½, par. 5—114(d).) Thus, the statute is clear and unambiguous.

▇ There is no language in the cooperative agreement that suggests that defendant should or is obligated to contribute any monies from the SEP into a pension fund for the police officers that participate. Plaintiffs point to the reimbursement provision of the agreements as their support for this contention. However, their contention is unsupported by the language in the agreements. The only reference made in the agreements is that participating agencies shall contribute 10% overage to be allocated toward: (a) court appearances; (b) time

lost and medical benefits paid due to injury while engaged in work; and (c) administrative overhead. Because of these specific enumerations of how the funds were to be allocated, it cannot be implied that the defendant was under an obligation to contribute to the pension fund. Had the parties so agreed, it should have been specifically stated.

Plaintiffs' argument regarding a contractual obligation based on a third-party beneficiary theory is also unsupported by the agreements. There is no mention at all in the agreements that payments were to be made to the pension fund from wages earned from the SEP. Further, the additional payments which the police officers received cannot be considered salary where the only reason that such payments were available resulted from the creation of the SEP. The money was not appropriated by the defendant, and the arrangement between the defendant and the participants in the SEP did not specifically address that issue.

■ A motion for judgment on the pleadings admits the facts well pleaded by the opposite party and seeks judgment on the question of law raised by the pleadings. (*Vermeil v. Jefferson Trust & Savings Bank* (1988), 176 Ill. App. 3d 556, 532 N.E.2d 288.) The question thus becomes, whether, as a matter of law, the plaintiffs could not succeed on the claims presented. In the instant case, the statute is clear and the agreements set forth the conditions by which the parties agreed to be bound. As a matter of law the defendant was not obligated to make the additional payments as asserted by plaintiffs. Therefore, the trial court did not err in granting defendant's motion for judgment on the pleadings.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.