JUDITH EHORN, Plaintiff-Appellant, v. BOARD OF EDUCATION OF ROBINSON COMMUNITY UNIT SCHOOL DISTRICT No. 2, Crawford County, Illinois, *et al.*, Defendants-Appellees.

Fifth District   No. 5—92—0301

Opinion filed July 12, 1993.—Rehearing denied September 9, 1993.

David M. Smith, of Springfield, and E.H. Price, of Price & Shaner, of Robinson, for appellant.

Barbara Fritsche and Maria M. Gonzalez, both of Rammelkamp, Bradney, Dahman, Kuster, Keaton, Fritsche & Lindsay, P.C., of Jacksonville, and Thomas R. Miller and Megan Paisley, both of Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for appellees.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

In 1971 Judith Ehorn was employed as a teacher by the Board of Education of Robinson Community Unit School District No. 2 (the Board). In 1986, Ehorn became the principal of the elementary school and served as principal until she was reclassified as a classroom teacher in 1991. Ehorn filed a complaint against the Board and its members and prayed for a declaratory judgment that the defendants failed to comply with statutory requirements in reclassifying her. The trial court entered a judgment on the pleadings in favor of the defendants. We affirm.

A motion for judgment on the pleadings admits the facts well pleaded by the opposite party and seeks judgment on the question of law raised by the pleadings. (*Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 448, 266 N.E.2d 897, 899-900; *Norris v. City of Chicago* (1992), 230 Ill. App. 3d 1037, 596 N.E.2d 135.) The question before us is whether, as a matter of law, the plaintiff could

succeed on the claims presented. In order to answer this question, an examination of the procedural background of this case is required.

On March 11, 1991, the Board passed a resolution which declared its intention to demote Judith Ehorn from principal to teacher. This resolution cited as grounds for the Board's action, "that it is in the best interests of Robinson Community Unit School District No. 2." On March 12, 1991, the Board sent Ehorn a copy of this resolution and a letter dated March 12, 1991, advising her of the reasons for the proposed reclassification:

> "[Ms. Ehorn has] not made sufficient progress in meeting and correcting the administrative performance concerns expressed to Ms. Ehorn on February 20, 1990. The Board adopts as its own the performance evaluation of Judy Ehorn dated March 8, 1991. The eleven (11) areas of concern noted in the evaluation form the basis, in fact, for Ms. Ehorn's proposed reclassification. The Board hereby incorporates the March 8, 1991 evaluation as part of this Notice."

After plaintiff attended both a private and a public hearing regarding her reclassification, the Board notified Ehorn that she was reclassified to a teaching position, which is a reduction in rank.

Plaintiff filed a seven-count complaint for declaratory relief. In all counts plaintiff requested the following relief: (a) a declaration that plaintiff's rights as set forth in section 10—23.8b of the Illinois School Code (105 ILCS 5/10—23.8b (West 1992)) were violated; (b) a money judgment in favor of the plaintiff and against the Board; and (c) other relief that the court might deem appropriate including reinstatement of plaintiff as a principal.

The same core of allegations is present in all counts of the complaint. Plaintiff alleges that under section 10—23.8b all reasons for her reclassification had to be presented to her no later than April 11, 1991. Plaintiff alleges that at a private hearing on April 16, 1991, she was provided with letters dated April 2, 1991, April 3, 1991, and April 12, 1991, which were additional matters regarding the basis of reclassification that were not previously disclosed as facts or grounds. Plaintiff also alleges that two letters dated December 18, 1990, and December 21, 1990, were presented at a public hearing on May 9, 1991, and that those letters were new information regarding her reclassification.

Plaintiff further alleges that (1) the facts regarding her reclassification were incomplete, unclear, and ambiguous; (2) the facts were neither directly set forth in the Board's resolutions nor incorporated by attachment to the Board's minutes; (3) all facts regarding her re-

classification were refuted; (4) the reasons orally expressed by Board members at the May 9, 1991, hearing differed from those given in the March 11, 1991, notice; and (5) the Board relied on untrue allegations and refused to discuss facts at the hearings. Plaintiff further alleges that she is entitled to relief under section 1983 of the Civil Rights Act of 1871 (42 U.S.C.A. §1983 (West 1981)), and that the Board violated the terms of her employment contract.

■ The complaint focuses on whether the Board complied with the statutory requirements of section 10—23.8b of the Illinois School Code. Section 10—23.8b provides the requirements and procedures for reclassification of principals.

> "*No principal* who has completed 2 or more years of administrative service in the school district *may be reclassified* by demotion or reduction in rank from one position within a school district to another for which a lower salary is paid *without written notice* from the board of the proposed reclassification *by April 1* of the year in which the contract expires.

> *Within 10 days* of the principal's receipt *of this notice, the school board shall provide the principal with a written statement of the facts regarding reclassification,* and *the principal may request and receive a private hearing with the board to discuss the reasons for the reclassification.* If the principal is not satisfied with the results of the private hearing, *he may,* within 5 days thereafter, *request and receive a public hearing on the reclassification. Any principal may be represented by counsel at a private or public hearing conducted under this Section.*

> If the board decides to proceed with the reclassification, *it shall give the principal written notice* of its *decision within 15 days of the private hearing or within 15 days of the public hearing* held under this Section, *whichever is later.* The decision of the board thereupon becomes final.

> Nothing in this Section prohibits a board from ordering lateral transfer of principals to positions of similar rank and equal salary." (Emphasis added.) (105 ILCS 5/10—23.8b (West 1992).)

A breakdown of this section reveals the following requirements and procedures:

> 1. Written notice from the Board to the principal of the proposed reclassification by April 1 of the year in which the contract expires.

2. Within 10 days of the principal's receipt of that notice, the Board shall provide the principal with a written statement of facts regarding reclassification.

3. Also within 10 days of the principal's receipt of the notice, the principal may request and receive a private hearing with the Board to discuss reasons for the reclassification.

4. If the principal is not satisfied with the results of the private hearing, the principal may, within 5 days thereafter, request and receive a public hearing on the reclassification.

5. If the Board decides to proceed with reclassification, it shall give the principal written notice of its decision within 15 days of the private hearing or within 15 days of the public hearing, whichever is later.

6. Any principal may be represented by counsel at the public or private hearing conducted under this section.

Plaintiff does not contest the Board of Education's ability to hire and fire its principals in accordance with its own reasonable standards. Plaintiff objects to what she describes as the Board's flagrant refusal to abide by the plain words of section 10—23.8b. Defendants contend, on the other hand, that the plaintiff's complaint, and the exhibits attached thereto, demonstrate that the Board fully complied with the provisions of section 10—23.8b.

It is undisputed that Judith Ehorn received (1) a written notice from the Board of her proposed reclassification from principal to teacher dated March 12, 1991, including certified copies of minutes of the Board meeting of March 11, 1991, (2) a Board resolution entitled "Resolution Reference the Proposed Reclassification of Judy Ehorn," (3) a letter stating reasons for her reclassification, and (4) a statement regarding the proposed reclassification. In her complaint plaintiff acknowledges receiving these documents on March 12, 1991. Plaintiff also acknowledged receiving a copy of a March 8, 1991, evaluation of her performance as a principal.

Plaintiff admits that she received a private hearing on April 16, 1991, and that the Board adopted the resolution for reclassification following the private hearing. It is also undisputed that she received written notice of the resolution on April 17, 1991, which advised her of her right to request a public hearing within five days. A public hearing was held on May 9, 1991. Plaintiff admits that the Board provided written notice of its decision to proceed with reclassification by letter dated May 9, 1991, enclosing a certified copy of the resolution entitled, "Resolution Reference the Reclassification of Judy Ehorn."

In order to satisfy plaintiff's assertion that the Board's procedures were contrary to section 10—23.8b, we will examine each of the charges in plaintiff's complaint.

Section 10—23.8b requires the Board to provide the principal with "a written statement of the facts regarding reclassification" within 10 days of the principal's receipt of the notice of reclassification. Plaintiff contends that all reasons for her reclassification had to be presented to her no later than April 11, 1991. While she received a statement of the reasons for her reclassification in March of 1991, Ehorn contends that after the April 11 deadline the Board erroneously added five items which served as additional reasons for its decision. Plaintiff contends that because she received five additional letters from the Board, the reasons for reclassification given prior to April 11 were rendered incomplete, unclear, and ambiguous.

Plaintiff's performance evaluation of March 8, 1991, which was incorporated by the Board in its letter of March 12, 1991, noted the following areas of concern with regard to characteristics frequently deemed essential for school administrators: leadership; professional standards and ethics; school community acceptance; planner/organizer; supervisor; evaluator; policy implementer; faculty/staff personnel; school plant and facilities; fiscal responsibilities; and school/community relations. Specific comments included in the performance evaluation which are pertinent to our discussion are as follows:

> "You need to take a leadership role in dealing with staff rather than reacting to situations. Example: The initiative for cleaning directions should have been identified and dealt with through your initiative rather than by complaints being lodged."

> "When policy decisions are made at the Board or Central Office level, you have an obligation to support those decisions. If you have a concern, know district policy, clarify interpretation, then support it. In at least two cases this year you created problems by not being professional in supporting district policy."

> "You don't back district policy. Most recently, you were advised of Superintendent Leininger's visit about two and a half weeks prior to his arrival. Yet only the day before, and only then through a sign posted, did you notify selected teachers of individual visits to classrooms. This was after you were told on 1/31/91 to take care of the situation. Support it or work through proper channels for change."

"On January 31, 1991, you had completed no evaluations, although you have five new teachers that each require this evaluation. Some observation was apparently done, but district procedure and contract language have certainly not been met. As you were a part of developing district procedures for evaluating during 86-87 and 87-88, you should know the procedures. If not, bring yourself up to speed on procedures, then follow procedures on a timely basis."

"On at least two occasions you have tried to circumvent district policy. In addition, you have virtually ignored district procedures on the evaluation process."

"Work on cleanliness with custodians on daily cleaning of all facilities."

The five letters plaintiff alleges constituted additional reasons for her reclassification which were not given prior to the April 11, 1991, deadline are from school superintendent Howard Jackson. Jackson's April 2, 1991, letter cites the plaintiff's apparent failure to in-service new teachers. Superintendent Jackson writes, "This situation creates yet another case where Board policy is not being carried out by you." The letter of April 3, 1991, cites an instance where plaintiff allegedly did not follow district policy in the purchase of a flag for the school. Plaintiff was once again cited for not following district policy in Superintendent Jackson's letter of April 12, 1991. In that letter plaintiff is criticized for misinterpreting district policy as to requests for professional leave to pursue additional college training. The superintendent's letter dated December 18, 1990, advises Ehorn of complaints regarding the uncleanliness of the school building. Finally, the letter dated December 21, 1990, once again cites plaintiff for not following district policy in regard to personal-leave policies.

The first rule of statutory construction is to ascertain and give effect to the intent of the legislature. Where the statutory language is clear it will be given effect without resort to other sources. (*Gill v. Miller* (1983), 94 Ill. 2d 52, 445 N.E.2d 330.) Absent legislative intent to the contrary, we must give ordinary meaning to the statute's notice provision. While a written statement of the facts regarding reclassification had to be given to Ehorn prior to April 11, 1991, the statute does not specify the content of the statement nor does it require that the statement be a conclusive and comprehensive list of reasons for the Board's decision.

■ In *Swanson v. Board of Education of Foreman Community Unit School District No. 124* (1985), 135 Ill. App. 3d 466, 481 N.E.2d 1248, the legislative history behind section 10—23.8b was examined.

The *Swanson* court noted that section 10—23.8b provides procedural safeguards not previously afforded principals, namely, notice and an opportunity to discuss the reclassification with someone other than the superintendent. (135 Ill. App. 3d at 473-74, 481 N.E.2d at 1253.) Under the analysis of *Swanson*, the legislative intent of section 10—23.8b was not to require that the Board give specific reasons for reclassification. (135 Ill. App. 3d at 473, 481 N.E.2d at 1252.) On the contrary, legislative debates concerning the statute indicate that the legislature intended to omit that portion of the original draft of the statute which required that the Board give specific reasons for reclassification. (See 79th Ill. Gen. Assem., House Proceedings, June 24, 1975.) In this case the five letters received after April 11, 1991, contain a reiteration of the stated reasons for reclassification. The letters cited school district policy violations and the complaints regarding the uncleanliness of the school building. Such problems were noted in the professional evaluation of March 8, 1991. Therefore, we cannot find that the trial court's entry of judgment on the pleadings as to the plaintiff's charges of untimely and inadequate notice was erroneous.

■ Plaintiff also alleges that the reclassification procedures were contrary to section 10—23.8b because the reasons for reclassification expressed by certain Board members at the May 9, 1991, hearing were different from the reasons given in the March 12, 1991, notice. In this case plaintiff received a written statement of the facts regarding reclassification, in which the Board specifically cited the 11 areas of concern noted in plaintiff's evaluation of March 8, 1991, as a basis for its decision. The comments made by the Board members at the hearing of May 9, 1991, as set forth in the minutes of that hearing, are as follows:

> "At this time comments were heard from the Board. Michael W. Elliott first addressed the question brought up by Mrs. Bush before the closed session. She had asked him if his mind had already been made up and his answer to that was yes. His statement was as follows. The Board has an obligation to employ those who will work in harmony and they also have the obligation to help solve problems. The Board is aware of the evaluations of the administrators but they are not and should not be involved in the evaluation process. The evaluation process is fair and effective. Judy Ehorn has been a principal for five years. Since then she has been evaluated each year. In the Spring of 1989 Judy Ehorn received a reclassification recommendation, but the Board retained her as principal by a 4-3 vote. In the Spring of 1990 this procedure was again imple-

mented and Superintendent Jackson's recommendation was to reassign her to the classroom. After thorough discussion, they retained her as principal by a 6-1 vote and Superintendent Jackson changed his recommendation. Specific directives have been given to Judy Ehorn. Concerns were shared with her to help her correct the problems. She was evaluated in 1991 and again the Board discussed her evaluation with the Superintendent. The Board's decision was that she had not done the job. Judy Ehorn has been given a fair opportunity to display her ability as a principal. This is the second time the Board has listened to Mrs. Ehorn's explanations of why should [*sic*] should be retained, but has failed to address her most critical shortcomings. She has failed to grasp the fact that she has not made the necessary changes to be a principal. She should be reclassified to a classroom teaching position, a position in which he felt she would be an asset to the district.

Roy Midgett then made the following comments. He has served on the Board for 22 years during which time he has made a lot of hard decisions. At no time has the Board questioned Judy Ehorn's devotion to the students. He strongly opposed her reclassification last spring but felt she should be given another opportunity to show them that she could be a part of the team. He specifically told her what was expected of her. If he felt this was not fair, he could not be a part of this reclassification. He felt that he must vote to reclassify her to a classroom teaching position.

Ronald Legg said he had known Judy and Cliff Ehorn for many years. Judy has many talents and the Board does not question that. It is in the best interest of the district to reassign her from principal to teacher. She can still serve the district but in a different capacity and she would best serve the district as a teacher.

Board President Carpenter said it is difficult to run a system with over 100 full-time teachers, 85 educational support personnel, 24 buses, four school buildings, over 1,825 students and a 6.9 million dollar budget. We have to work as a team."

Plaintiff has failed to point out specific statements or comments made by the Board members which contravene the reasons given in the notice of reclassification. We note that the plain language of section 10—23.8b does not restrict the discretion of the Board to offer what plaintiff views as additional reasons for reclassification. Nonetheless, it is apparent that the Board members did not set forth any reasons for

plaintiff's reclassification other than those that were previously set forth in her notice of reclassification. Based on the record, we cannot find that the comments of the Board members at the May 9, 1991, hearing were in contravention to section 10—23.8b.

Ehorn also argues that the facts regarding reclassification were not directly set forth in the Board's resolutions nor directly incorporated by attachment to the Board's minutes. The notice provision of section 10—23.8b requires only that *a written statement of the facts regarding reclassification* be given. The statute does not specify the form or content of such a statement, nor does it require that the facts be specifically set forth in the Board's resolutions or incorporated by attachment to the Board's minutes. The legislative intent of the statute is simply to provide school principals with notice and an opportunity to discuss the reasons for the reclassification with the Board. *Meadows v. School District U-46* (1986), 141 Ill. App. 3d 335, 490 N.E.2d 140.

■ Plaintiff next argues that the Board violated section 10—23.8b by refusing to discuss the facts cited for reclassification. Reclassification appears to be within the total discretion of the Board provided the notice and hearing requirements are met. (*Swanson*, 135 Ill. App. 3d at 473, 481 N.E.2d at 1252.) A hearing in this instance does not require an evidentiary hearing or an adversarial proceeding. (*Swanson*, 135 Ill. App. 3d at 475, 481 N.E.2d at 1254.) It is undisputed that plaintiff received a written statement of reasons for her reclassification, including a copy of her 1991 principal evaluation. It is also undisputed that plaintiff requested and received both a private and a public hearing before the Board. Given these facts, without more than a cursory allegation that the Board failed to discuss the facts, we cannot find that the trial court erred in entering a judgment on the pleadings as to this allegation.

■ Plaintiff's next allegation is that the facts the Board relied on were untrue and were refuted. Plaintiff maintains that the Board's reliance on untrue facts as the basis for its decision contravenes section 10—23.8b. The Board argues that it refrains from commenting upon the truth or falsity of the reasons for reclassification because such a question is irrelevant when considering the requirements of section 10—23.8b.

Under the statute, reclassification appears to be within the total discretion of the Board provided the notice and hearing requirements are met. (*Swanson*, 135 Ill. App. 3d at 473, 481 N.E.2d at 1252.) As explained by Senator Knuppel during legislative debates on this statute:

"This *** gives him the opportunity, first of all, to a private hearing where he can lay on the table before the board what the problems may or may not be with respect to the reason he's being reclassified or if he feels that he's not received a fair hearing to have a public hearing. *At least so that the board members and the people of the community will know whether he has been dealt fairly with.*" (75th Ill. Gen. Assem., Senate Proceedings, June 25, 1975, at 153.)

Given a literal reading of the statute, in addition to its legislative history, we cannot find the trial court acted improperly in entering a judgment on the pleadings as to the charge that the Board relied on untrue facts in reaching its decision.

■ We now turn to plaintiff's allegation in count VI of her complaint that "the failure of the said defendants to give timely notice of reasons, to give truthful reasons, to give specific reasons and to discuss the reasons at hearing constitute a denial of the plaintiff's rights under *** 10—23.8b and the right to be secure in her good name and reputation which acts are a denial of legal rights under color of law in the contemplation of 42 U.S.C. Section 1983." Because of our determination that plaintiff has failed to allege a deprivation of cognizable rights under 10—23.8b, no rights, privileges, or immunities have been infringed upon so as to trigger the operation of section 1983 (42 U.S.C.A. §1983 (West 1981)). Therefore, we cannot find that the trial court erred in entering a judgment on the pleadings as to this count.

Count VII of plaintiff's complaint alleges that her employment as principal is governed by the provisions of an employment contract attached to her complaint. Count VII sets forth a section of that contract:

"7. Discharge for Cause—Throughout the term of the Agreement, Elementary Principal shall be subject to discharge for cause provided, however, that the Board does not arbitrarily or capriciously call for dismissal and that Elementary Principal shall have the right to service of written charges, notice of hearing, and a fair hearing before the Board ***.
* * *
13.1 This Agreement has been executed in Illinois and shall be governed in accordance with the laws of the State of Illinois in every respect."

One point that immediately comes to our attention is that the employment contract was for the period from July 1, 1990, to June 30, 1991. Plaintiff's reclassification occurred beyond the term of her contract as

706

principal. The trial court did not err in entering judgment on the pleadings as to this charge.

Given the facts, section 10—23.8b of the School Code is the only statute that governs in this case. The statute is clear, and as a matter of law the defendant was not required to fulfill the additional duties asserted by plaintiff. Therefore, the trial court did not err in granting defendants' motion for judgment on the pleadings.

Accordingly, the judgment of the circuit court of Crawford County is affirmed.

Affirmed.

LEWIS and WELCH, JJ., concur.